**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BIJON HILL,
 *Plaintiff-Appellant*,

v.

WALMART INC., a Delaware
corporation,
 *Defendant-Appellee.*

No. 21-15180

D.C. No.
4:19-cv-05436-
JST

OPINION

Appeal from the United States District Court
for the Northern District of California
Jon S. Tigar, District Judge, Presiding

Argued and Submitted December 9, 2021
Pasadena, California

Filed April 26, 2022

Before: PAUL J. KELLY, JR.,* MILAN D. SMITH, JR.,
and DANIELLE J. FORREST, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

---

* The Honorable Paul J. Kelly, Jr., United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

**SUMMARY**[**]

---

### California Employment Law

The panel affirmed the district court's summary judgment in favor of Walmart in a diversity action brought by a plaintiff who alleged that Walmart owed her penalties pursuant to California Labor Code § 203 because it failed to pay her immediately after several photo shoots.

Plaintiff appeared in ten photo shoots organized by Walmart between July 2016 and August 2017 for a total of fifteen days, in non-consecutive periods of one or two days. Plaintiff sued Walmart for its failure to pay her immediately after each photo shoot ended and sought more than $540,000 in penalties. The district court denied summary judgment on Walmart's defense that plaintiff was an independent contractor outside the protection of the relevant Labor Code provisions due to disputes of material fact. However, it granted summary judgment on Walmart's good-faith defense. The district court concluded that there was a good-faith dispute about whether plaintiff was an independent contractor that made it objectively reasonable for Walmart to believe plaintiff was not an employee.

As a threshold issue, the panel rejected plaintiff's contention that Walmart was foreclosed from raising a good-faith defense based on mistakenly classifying an employee as an independent contractor. The panel held that Walmart's argument that plaintiff was an independent contractor was a good-faith dispute that any wages are due. A good-faith

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

mistake about a worker's employment status was a defense to the imposition of waiting-time penalties pursuant to Cal. Labor Code § 203.

The panel turned to the merits of Walmart's good-faith defense. First, the panel held that nothing in the record suggested bad faith on Walmart's part. Next, the panel considered whether a reasonable jury could find that Walmart's independent contractor defense was unreasonable or unsupported by evidence. The panel held that the applicable test for its analysis of the employment relationship was the common law test derived from *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 769 P.2d 399 (Cal. 1989). The panel noted that a second test for employment explained in *Martinez v. Combs*, 231 P.3d 259 (Cal. 2010), and *Dynamex Operations West, Inc. v. Superior Court*, 416 P.3d 1 (Cal. 2018), applied only to cases governed by California Industrial Welfare Commission (IWC) wage orders; and held that it did not apply here where plaintiff did not allege that Walmart violated any wage order.

The panel next considered the ultimate issue: based on the undisputed material facts, and the state of California employment law in 2016 and 2017, did Walmart have reasonable grounds to believe plaintiff was an independent contractor? Plaintiff put forth evidence that Walmart exercised significant control over her activities. On the other hand, plaintiff arranged for and paid for her own travel; Walmart did not provide plaintiff with a Form W-2; plaintiff provided modeling services for other companies; and the length of time plaintiff was employed argued against employment status. All these facts would have suggested to Walmart that the parties did not believe they were forming an employment relationship – the last *Borello* factor. The unrebutted facts in the record also suggested that another

*Borello* factor – whether or not the work was a part of the regular business of the principal – weighed against employment status. Consequently, there were some reasonable grounds for Walmart to believe that plaintiff was an independent contractor, which was sufficient for a good-faith dispute. The panel rejected plaintiff's counterarguments where she cited three cases that she contended supported her position. The panel held that the cases were not enough to render unreasonable Walmart's belief that plaintiff was a contractor.

Because Walmart raised a good-faith dispute as to whether it was plaintiff's employer and that dispute provided a sufficient defense to plaintiff's claims, and because plaintiff did not identify a material factual dispute, the panel affirmed the district court's summary judgment to Walmart.

## COUNSEL

Jordanna G. Thigpen (argued), Thigpen Legal P.C., Beverly Hills, California; Roger Y. Muse, Excelsior Law, Beverly Hills, California; for Plaintiff-Appellant.

Timothy L. Reed (argued), Ford & Harrison LLP, Oakland, California; Jenny S. Choi, Ford & Harrison LLP, Los Angeles, California; for Defendant-Appellee.

**OPINION**

M. SMITH, Circuit Judge:

Plaintiff-appellant Bijon Hill appeals from the district court's grant of summary judgment to defendant-appellee Walmart, Inc. Hill modeled in several Walmart photo shoots and claims that Walmart owes her penalties pursuant to California Labor Code § 203 because it failed to pay her immediately after each shoot. In the district court, Walmart contended that no penalties are owed because Hill was an independent contractor rather than a Walmart employee. Alternatively, Walmart argued that no penalties are owed because there was a good-faith dispute as to Hill's employment status. The district court concluded that disputes of material fact prevented it from deciding whether Hill had performed her work as an employee but granted summary judgment to Walmart based on its good faith defense.

We affirm. It is undisputed that Hill modeled for Walmart for a total of fifteen days over the course of a year, and that she performed her services as a freelancer in sporadic one- or two-day increments. Along with other indicators that Hill was an independent contractor, the limited and irregular nature of her work made it reasonable for Walmart to believe that Hill was not an employee, and, as a result, that she was not entitled to immediate payment at the conclusion of each photo shoot. That is enough for Walmart's good-faith defense to succeed.

## BACKGROUND

## I. LEGAL FRAMEWORK

In California, "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Lab. Code § 201(a). "Discharge" includes not only involuntary termination, but also releasing an employee after she has "complet[ed] the specific job assignment or time duration for which [she] was hired." *Smith v. Super. Ct.*, 137 P.3d 218, 229 (Cal. 2006) (*L'Oreal*). California Labor Code § 203(a) provides that if an employer "willfully" fails to pay wages upon discharge, the employee's wages "shall continue as a penalty" from the discharge date for up to thirty days.

"A willful failure to pay wages within the meaning of [§ 203] occurs when an employer intentionally fails to pay wages . . . when [they] are due." 8 C.C.R. § 13520. "However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under [§ 203]." *Id.*

## II. FACTUAL AND PROCEDURAL BACKGROUND

Hill appeared in ten photo shoots organized by Walmart in San Francisco between July 2016 and August 2017. She worked for a total of fifteen days during this time, in non-consecutive periods of one or two days. Hill claims that this amounted to ten separate instances of employment and that she was "discharged" at the end of each photo shoot.

During this time, Hill was represented by Scout Talent Management Agency. Walmart had a contract with Scout whereby it agreed to pay Scout a daily flat rate for each day of modeling services, which was to be passed along to Hill,

plus a commission. Scout was required to send Walmart invoices, which were payable within thirty days. Walmart and Scout's contract specified that Scout and its "personnel" were independent contractors.

In July 2019, Hill sued Walmart in the San Francisco Superior Court, claiming that Walmart violated the California Labor Code provisions discussed above by failing to pay her immediately after each photo shoot ended. She sought more than $540,000 in penalties. Walmart removed the case to federal court based on diversity of citizenship. It also filed a third-party complaint against Scout.

In November 2020, Walmart moved for summary judgment on Hill's claims. The district court denied summary judgment on Walmart's defense that Hill was an independent contractor outside the protection of the relevant Labor Code provisions, concluding that Hill had raised a triable question of fact about whether she was an employee. The district court noted, for example, that Walmart controlled when the photo shoots occurred and nearly every aspect of Hill's appearance, including her clothing, hair, makeup, and nails. Though Walmart argued that Hill used her "discretion and expertise as a model in making poses," the record showed that she was given highly specific instructions about which poses to strike.

However, the district court granted summary judgment on Walmart's defense that there was a good-faith dispute about whether Hill was an independent contractor, reasoning that the short length of time Hill worked for Walmart and the fact that she had also worked for other companies, among other factors, made it objectively reasonable for Walmart to believe Hill was not an employee.

Hill timely appealed. We review the district court's grant of summary judgment de novo. *Oswalt v. Resolute Indus., Inc.*, 642 F.3d 856, 859 (9th Cir. 2011).

## ANALYSIS

## I.　LEGAL STANDARDS

To prevail on its summary judgment motion, Walmart had to show that "there is no genuine issue as to any material fact and [that it] is entitled to judgment as a matter of law" on its good-faith defense. Fed. R. Civ. P. 56(a). "A genuine issue of material fact will be absent if, upon viewing the evidence and inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law. Summary judgment is inappropriate if a reasonable juror, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008) (cleaned up).

California law applies in this diversity case. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010). In the absence of controlling authority by the California Supreme Court, "we follow decisions of the California Court of Appeal unless there is convincing evidence that the California Supreme Court would hold otherwise." *Id.*

## II.　AVAILABILITY OF GOOD-FAITH DEFENSE

At the threshold, Hill argues that Walmart is foreclosed from raising a good-faith defense based on mistakenly classifying an employee as an independent contractor. We disagree.

To reiterate, "a good faith dispute that any wages are due will preclude imposition of waiting time penalties under [§ 203]." 8 C.C.R. § 13520. Hill argues that this defense does not apply here because it requires "a good faith dispute that *any* wages are due" under § 203, and Walmart does not dispute that some wages are due; Walmart just disputes *when* those wages are due.

That argument fails. Although neither party raised this point, "wages" and "payment" are not necessarily the same thing under the California Labor Code. For purposes of the statutes involved here, "wages" are specifically defined as "all amounts for labor performed by *employees*." Cal. Lab. Code § 200(a) (emphasis added) (applying this definition to "this article," meaning Cal. Lab. Code §§ 200–244); *see also id.* § 203(a) (referring to "wages of an employee"). So, while there is no dispute that Walmart had to *pay* Hill, Walmart's contention that Hill is an independent contractor necessarily conflicts with the idea that there were "any *wages* due" within the meaning of § 203 or 8 C.C.R. § 13520.

Moreover, 8 C.C.R. § 13520 explains that "[a] 'good faith dispute' that any wages are due occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee." *Id.* It is undisputed that if Hill were an independent contractor, then she would not be an "employee" entitled to an immediate payment of wages upon discharge pursuant to Labor Code § 201(a) or to recover penalties from Walmart pursuant to § 203. Consequently, Walmart's argument that Hill was an independent contractor is a "good faith dispute that any wages are due." *See also Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1202 (2008) (employer had good-faith defense because its "legal

obligations" were "unclear," and the arguments it made for its ultimately incorrect legal position were not "unreasonable or frivolous"); *Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 8 (1981) (legal ambiguity is a valid basis for a good-faith defense).

Along more general lines, Hill also argues that allowing a good-faith defense here would reward ignorance of the law and undermine § 203's role in incentivizing timely payment of wages. But the fact that § 203 only punishes "willful" conduct suggests that the legislature only intended to impose penalties on employers who lack a good excuse for withholding payment to discharged employees. *See, e.g.*, *Amaral*, 163 Cal. App. 4th at 1202 (employer's failure to pay timely wages was not willful because it arose out of a mistake of law that was not "unreasonable or frivolous"). An important rationale behind allowing a good faith defense in this context is to prevent employers from being "penalized" in genuine cases of "uncertainty." *Barnhill*, 125 Cal. App. 3d at 8; *see also Amaral*, 163 Cal. App. 4th at 1201 ("*Barnhill's* holding was memorialized in [8 C.C.R. §] 13520."). So, to the extent that Walmart has raised such an ambiguity about Hill's employment status, allowing a good-faith defense here amply serves the balance struck by the applicable statutes and regulations between incentivizing prompt payment of wages and shielding innocent mistakes from penalties.

For these reasons, we conclude that a good-faith mistake about a worker's employment status is a defense to the imposition of waiting-time penalties pursuant to § 203.[1]

---

[1] We observe that this holding is consistent with the apparent consensus view among federal district courts in California. *See, e.g.*,

## III.    MERITS OF GOOD-FAITH DEFENSE

The next question is whether, based on undisputed material facts, Walmart has raised a good-faith dispute about Hill's employment status.  The fact that Walmart did not prevail at the summary judgment stage on its primary defense that Hill was an independent contractor is irrelevant to this question because "[t]he fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist."  8 C.C.R. § 13520.

Instead, the operative question is simply whether, based on the state of the law when Hill's photo shoots occurred, Walmart has presented an objectively reasonable defense that is not marred by bad-faith conduct.  That is because "[d]efenses presented which, under all the circumstances, are unsupported by any evidence, are unreasonable, or are presented in bad faith, will preclude a finding of a 'good faith dispute.'"  *Id.*  "This regulation imposes an objective standard.  The appearance of the language 'or are presented in bad faith' in the list of circumstances precluding a finding of a good faith dispute does not render the test a subjective one, but indicates that subjective bad faith may be of evidentiary value in the objective bad faith analysis."  *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 5th 1308, 1332 (2018) (citations and internal quotation marks omitted).  Unless there is evidence of subjective bad faith, it is "beside the point" that Walmart may have only "formulated" its independent contractor arguments during litigation.  *See Amaral*, 163 Cal. App. 4th at 1204.

---

*Villalpando v. Exel Direct Inc.*, No. 12-CV-04137-JCS, 2015 WL 5179486, at *36–37 (N.D. Cal. Sept. 3, 2015) (collecting cases and granting summary judgment to employer on § 203 claim).

### A. Bad Faith

To start, nothing in the record suggests "bad faith" on Walmart's part. For example, there is no evidence that Walmart knew that Hill was an employee but decided to take longer than it should have to pay her, or that Hill ever brought up late payment issues before filing suit. *Cf. Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 325–26 (2005) (evidence that employer "was aware" it was underpaying its employees supported finding of willfulness despite ambiguity in the law). To the contrary, Hill admitted in her deposition that she never asked Walmart to pay her more quickly or to pay her directly rather than sending payments to Scout. It is also undisputed that Walmart paid Hill in full for her work; the only issue is the timing of the payments. Hill's counsel largely conceded these points at oral argument.

In a cursory attempt to show bad faith, Hill says that Walmart's contract with Scout evinces "subterfuge" because it declares Scout's personnel to be independent contractors while also allowing Walmart significant control over Hill's work. However, she cites no authority suggesting it is improper to include standard language in a contract stating that neither party views the other's personnel as its employees, nor does she cite any evidence that Walmart included this provision while (for instance) privately believing Hill was an employee. At best, Hill's argument amounts to mere speculation that Walmart was acting in bad faith, which is insufficient to defeat summary judgment. *See, e.g.*, *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

## B.  Reasonableness

The remaining question is whether a reasonable jury could find that Walmart's independent contractor defense was unreasonable or unsupported by evidence.  Answering this question requires us to first identify the relevant test (or tests) for an employment relationship under California law.

### i.  Applicable Test for Employment Relationship

The parties have directed us to two tests for an employment relationship under California law.  The first is the common law test, which is derived from *S. G. Borello & Sons, Inc. v. Department of Industrial Relations*, 769 P.2d 399 (Cal. 1989).  Under the common law, "[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired."  *Id.* at 404 (quoting *Tieberg v. Unemployment Ins. App. Bd.*, 471 P.2d 975, 977 (Cal. 1970)) (alteration in original).  While the right to control is the most important factor, it is not the only one.  *Id.*  Rather, *Borello* instructs courts to consider the following "secondary indicia" to determine "the nature of a service relationship:"

> (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services

are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.

*Id.* (citing, *inter alia*, Restatement (Second) of Agency § 220). The importance due to each individual factor is case-specific. *See, e.g.*, *Germann v. Workers' Comp. Appeals Bd.*, 123 Cal. App. 3d 776, 783 (1981).

The second test for employment originated with the California Industrial Welfare Commission (IWC), which "is the state agency empowered to formulate regulations (known as wage orders) governing employment in the State of California." *Tidewater Marine W., Inc. v. Bradshaw*, 14 Cal. 4th 557, 561 (1996). The principal California Supreme Court opinions explaining this test are *Martinez v. Combs*, 231 P.3d 259 (Cal. 2010), and *Dynamex Operations West, Inc. v. Superior Court*, 416 P.3d 1 (Cal. 2018). *Martinez* held that "[t]o employ . . . under the IWC's definition, has three alternative definitions. It means: (a) to exercise control over the wages, hours or working conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common law employment relationship." 231 P.3d at 278. The first definition is relatively self-explanatory, and the third definition directly incorporates the common-law test, *see Salazar v. McDonald's Corp.*, 944 F.3d 1024, 1032 (9th Cir. 2019).

As for the second definition, *Dynamex* held that courts should apply the "ABC test" to determine whether the "suffer or permit to work" standard has been met. 416 P.3d

at 40. That test presumes the existence of an employer-employee relationship "[u]nless the hiring entity establishes" all three of the following:

> (A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact, (B) that the worker performs work that is outside the usual course of the hiring entity's business, and (C) that the worker is customarily engaged in an independently established trade, occupation, or business[.]

*Id.* Although *Dynamex* was decided after the events giving rise to this case, the California Supreme Court has held that it applies retroactively. *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 478 P.3d 1207, 1209 (Cal. 2021).[2]

Despite Hill's arguments to the contrary, we conclude that only the *Borello* test is relevant to our analysis. *Martinez* and *Dynamex* "did not purport to replace the *Borello* standard in every instance where a worker must be classified as either an independent contractor or an employee for purposes of enforcing California's labor protections." *Cal. Trucking Ass'n v. Su*, 903 F.3d 953, 959 n.4 (9th Cir. 2018). Both cases make clear that they only apply to cases governed by IWC wage orders. *See Dynamex*, 416 P.3d at 35–36; *Martinez*, 231 P.3d at 269. Along these lines, the California Court of Appeal has recently held that for "Labor

---

[2] Additionally, in September 2019, the California legislature codified the ABC test via Assembly Bill 5. However, neither party contends that this legislation applies retroactively here.

Code claims that are not either rooted in one or more wage orders, or predicated on conduct alleged to have violated a wage order, the *Borello* test remains appropriate." *Gonzales v. San Gabriel Transit, Inc.* 40 Cal. App. 5th 1131, 1157 (2019), *review dismissed*, 481 P.3d 1144 (Cal. 2021); *see also Garcia v. Border Transp. Grp., LLC*, 28 Cal. App. 5th 558, 571 (2018) ("There is no reason to apply the ABC test categorically to every working relationship, particularly when *Borello* appears to remain the standard for worker's compensation . . . . *Borello* furnishes the proper standard as to [the plaintiff's] non-wage-order claims.");[3] *Parada v. E. Coast Transp. Inc.*, 62 Cal. App. 5th 692, 699 n.2 (2021) (citing *Gonzalez* and *Garcia*).

Hill did not allege that Walmart violated any wage order, and she does not cite to any case contradicting the Court of Appeal decisions cited above or otherwise applying the IWC test outside the wage-order context. But even if the IWC test did somehow apply, Walmart would still be entitled to raise a good-faith defense because it would have been reasonable for Walmart to conclude that only the *Borello* test governed its relationship with Hill in light of the language in *Martinez* and *Dynamex* suggesting their scope is limited to wage-order cases. *See Amaral*, 163 Cal. App. 4th at 1202 (reasonable mistake of law sufficient for good-faith defense). Consequently, we need only discuss whether Walmart would have had good reason to believe that Hill was an independent contractor under the *Borello* test.

---

[3] In *Garcia*, "both parties agree[d] *Dyanamex* applie[d]," but the Court of Appeal applied *Borello* anyway because neither party "identifie[d] a basis to use the ABC test in evaluating non-wage-order claims." 28 Cal. App. 5th at 571. However, seemingly due to inadequate argument from the parties, *Garcia* confined this holding to its particular facts. *See id.* at 571 & n.11.

### ii.  Application of the Good-Faith and *Borello* Tests

At this point, we are equipped to state—and resolve—the ultimate issue before us: based on the undisputed material facts, and the state of California employment law in 2016 and 2017,[4] did Walmart have reasonable grounds to believe Hill was an independent contractor?  We believe so.

To be sure, Hill has put forth evidence that Walmart exercised significant control over her activities.  Walmart selected Hill to model some of its products after she was photographed and measured at a "casting meeting," and her information was passed on to a member of Walmart's creative team.  Before each photo shoot, Walmart sent instructions to Hill regarding her clothing, hair, nails, makeup, and general appearance.  Walmart provided the clothing Hill was to wear for the shoots, which included shoes, dresses, undergarments, swimwear, and other items.  Onsite stylists, producers, photographers, and other personnel chose the outfits and told Hill how to pose.  When the shoots concluded, Hill returned the garments to Walmart.

On the other hand, Hill arranged and paid for her own travel, and deducted her travel and other expenses—ranging from payments for getting her nails done to gym

---

[4] We note that the events of this case took place before Cal. Lab. Code § 201.6 was enacted.  That statute defines a "print shoot employee" as "an individual hired for a period of limited duration to render services relating to or supporting a still image shoot, including film or digital photography, for use in print, digital, or internet media," and states that such employees are "entitled to receive payment of the wages earned and unpaid at the time of termination by the next regular payday."  The parties did not highlight this statute as relevant on appeal, and so we do not address it further.

membership fees—as business expenses on her tax returns. Walmart did not provide Hill with a Form W-2, which reports an employee's annual wages for federal income tax purposes. She also provided modeling services for other companies during the relevant yearlong period and was "free to decline any bookings from Walmart." This suggests that Hill was engaged in a "distinct occupation or business." The "length of time" Hill was employed—fifteen total days, each time in one- or two-day increments—also argues against employment status, as do the facts that she was paid a flat daily rate rather than an hourly wage and that, at the end of each shoot, she was asked to sign a voucher acknowledging that she would be paid for the use of her likeness. Moreover, Walmart did not provide Hill with tax forms, an employee handbook, or other trappings of a traditional employment relationship. Apart from the voucher acknowledging her services had been performed, Hill did not sign any Walmart documents. All these facts would have suggested to Walmart that the parties did not believe they were forming an employment relationship (the last *Borello* factor).[5]

These unrebutted facts in the record also suggest that another *Borello* factor—"whether or not the work is a part of the regular business of the principal"—weighs against employment status, or at most is neutral. Walmart is primarily a retailer. Although her modeling services were intended to be used to market products on Walmart's website, Hill has not shown that taking photographs of

---

[5] Hill testified in her deposition that she "was under the impression" that she was a Walmart employee during her photo shoots. However, because Hill points to no evidence that she expressed this belief to Walmart (as discussed in Part III.A), this testimony does not create a factual question as to the reasonableness of Walmart's good-faith defense with respect to the final *Borello* factor.

models is a regular part of Walmart's business, as opposed to an activity conducted on an as-needed basis.

Consequently, there were some reasonable grounds for Walmart to believe that Hill was an independent contractor, which is sufficient for a good-faith dispute.

### iii. Hill's Counterarguments

Hill cites three cases that she contends lend support to her position but that are not enough to render unreasonable Walmart's belief that Hill was a contractor. The first case is *Zaremba v. Miller*, which involved facts that are similar to those here:

> Plaintiff, a model, sued defendant, a photographer, for damages pursuant to Labor Code section 203 for failure to timely pay his wages. Plaintiff used an agent (Dennis) to find work for him. The agent also billed for plaintiff's services, collected the payments, deducted his fee, and sent the balance to plaintiff. Dennis secured the present job for plaintiff with defendant. Plaintiff called defendant and was told where and when to appear and what to wear. On arrival, plaintiff was told to wear a butcher's apron that was provided and where to stand and what to do. Testimony was introduced that the model had to follow the directions of the photographer or he would be fired.

113 Cal. App. 3d Supp. 1, 4 (App. Dep't Super. Ct. 1980). The court held that the "plaintiff was an employee" entitled to waiting time penalties because of the degree of control the photographer exercised over him. *Id.* at 5.

However, this case does not help Hill as much as she might like. First, *Zaremba* involved a direct working relationship between the putative employer and putative employee. Here, in contrast, Hill has failed to show that Walmart exercised the same level of direct control over her activities. Walmart has provided an unrebutted declaration stating that the producer and others involved in the photo shoots were generally freelancers, not Walmart employees. This suggests that even if Walmart had general oversight over Hill's activities and control over the outcome of her photo shoots, it was relying on outside contractors to handle the details of Hill's work.

Hill argues that Walmart's declaration is deficient because it states that Walmart "generally" used freelancers that were "typically" provided by outside agencies, but does not adequately provide details about Hill's specific shoots. Hill, however, has put forward no evidence that would be admissible at trial and that could establish that Walmart deviated meaningfully from its usual practice.[6] *See* Fed. R. Civ. P. 56(c) & (e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." (citations omitted)); *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible

---

[6] In her deposition, Hill testified that she believed these personnel were Walmart employees because the photo shoots took place on Walmart's premises and because a photographer, stylist, and producer told her that they worked for Walmart. Both in the district court and on appeal, Walmart has objected to the admissibility of the statements made to Hill on the basis that they are hearsay and speculation. Hill does not dispute that this testimony is inadmissible in her briefs.

evidence in ruling on a motion for summary judgment."); *see also C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480–81 (9th Cir. 2000) (holding plaintiff failed to raise "a genuine issue for trial" because it did not counter evidence supporting a defense to its claims). The fact that other participants in the photo shoot worked on Walmart's premises is equally consistent with either employee or freelancer status.

Second, *Zaremba* contained stronger indicators of an employment relationship in respects other than control over work. Hill was paid a daily flat rate, was not directly engaged in Walmart's retail business, and was paid indirectly through Scout. Conversely, the plaintiff in *Zaremba* was engaged in the photographer's primary business (photography), was paid at an hourly rate, and received payment directly. *See* 113 Cal. App. 3d. Supp. at 4.

Finally, even if we were to minimize the importance of these distinctions, *Zaremba* is not a sufficiently authoritative statement of California law to foreclose the possibility that Hill was a contractor. It was decided by the appellate department of the Los Angeles Superior Court, not by the California Court of Appeal or Supreme Court. This means that it is binding at most only on the Los Angeles Superior Court, and not in San Francisco where the events in this case took place. *See, e.g.*, *People v. Corners*, 176 Cal. App. 3d 139, 146 (1985) ("[A] decision of the Appellate Department of the San Francisco Superior Court is not binding upon the Butte County Superior Court nor upon this court . . . ."). While *Zaremba* may still be cited for its persuasive value, our court has indicated that individual appellate department opinions are not authoritative. *See Edgerly v. City & Cnty. of San Francisco*, 713 F.3d 976, 982–83 (9th Cir. 2013). Consequently, *Zaremba* is not a definitive statement of

California employment law as it applies to models (at least outside of Los Angeles).[7]

The second case cited by Hill—*L'Oreal*, *supra*, 137 P.3d 218, decided by the California Supreme Court—involved a model that was hired for a one-day job, and cited *Zaremba* approvingly for the general proposition that control is the most important factor in the employment test. *See* 137 P.3d at 222–23. But *L'Oreal* did not hold the models are employees as a matter of law; it held only that an employee is "discharged" for purposes of § 203's waiting time penalty provisions either when the employee is fired *or* "when an employer releases an employee after completion of a specific job assignment or time duration for which the employee was hired." *Id.* at 220. The employer had moved for summary judgment only on the grounds that no "discharge" had occurred, and "[f]or purposes of its motion, . . . conceded plaintiff was its employee and not an independent contractor." *Id.* As a result, the question of the model's employment status was never before the court.

Finally, in the district court, Hill relied on *Tieberg v. Unemployment Insurance Appeals Board*, 471 P.2d 975 (Cal. 1970), which held that certain television writers were employees. As here, there was some evidence that the

---

[7] We also note that *Zaremba* is a very old case, predating *Borello* by almost a decade and the events at issue here by more than thirty years. Hill says *Zaremba* was a "seminal case" proving that "professional models render their services as employees" as a matter of law, but she identifies no more recent case holding that that is true, and we have not found one. Our independent research indicates that *Zaremba* has only been cited by ten other cases in over forty years (including in the district court's order here). None of those cases cite it for the proposition that "models render their services as employees" as a matter of law. These facts further undermine *Zaremba*'s value as an authority.

writers were independent contractors, including the facts that they were "engaged in a distinct occupation, that their work involves skill, that they do not work on [the employer's] premises, that they [were] employed only to write a particular play, and that they [were] paid by the job rather than by the hour." *Id.* at 982 (cleaned up). Nonetheless, this was all overridden by "ample independent evidence that the employer ha[d] the right to control the actual details of the writers' work and that it exercise[d] this right." *Id.*

However, a "significant factor" in *Tieberg* was that "there [was] an agreement between the purported employer and employee setting forth the details of their relationship." *Id.* at 981 (distinguishing two other cases on this ground). Beyond the fact that the agreement gave the employer significant control over the writers' activities, the "agreement referred to the writers as employees throughout and contained other provisions, such as those relating to [a] pension plan, which would be appropriate only if the writers were employees." *Id.* This was a "strong" indicator of an employment relationship. *Id.* A similar employment agreement is not involved in this case.[8] Indeed, Walmart's agreement with Scout says the opposite.

Ultimately, while these cases may cast doubt on the strength of Walmart's independent contractor defense, they are not similar or (for *Zaremba*) authoritative enough to

---

[8] It is also worth noting that one of *Tieberg*'s main holdings was that the trial court erred in treating control as "the sole factor" relevant to determining employment status. *Id.* at 979. "[T]he right to control and direct the individual who performs services as to the details and means by which the result is accomplished is the most important consideration but not the only element in determining whether an employment relationship has been created." *Id.* at 980.

render that defense unreasonable. Consequently, they do not defeat Walmart's good-faith argument.

## CONCLUSION

We agree with the district court that Walmart has raised a good-faith dispute as to whether it was Hill's employer. Because that provides a sufficient defense to Hill's claims, and because Hill has not identified a material factual dispute, we affirm the district court's grant of summary judgment to Walmart.

**AFFIRMED.**