NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUN 22 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| OCM GROUP USA, INC.,<br><br>Plaintiff-Appellant,<br><br>v.<br><br>LIN'S WAHA INTERNATIONAL CORP.,<br>a New York corporation; DOES, 1-10,<br><br>Defendants-Appellees. | No.   21-55651<br>       21-55954<br><br>D.C. No.<br>2:19-cv-08917-SB-KS<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Stanley Blumenfeld, Jr., District Judge, Presiding

Argued and Submitted June 9, 2022
Pasadena, California

Before:  M. SMITH, BADE, and VANDYKE, Circuit Judges.

Plaintiff OCM Group USA, Inc. appeals from the district court's grant of

summary judgment and award of attorney fees in favor of defendant Lin's Waha

International Group (LWI).  We have jurisdiction pursuant to 28 U.S.C. § 1291, and

we affirm.

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

1. At the threshold, we deny OCM's request for judicial notice. Case No. 21-55651, Dkt. No. 17. OCM never presented the relevant document to the district court, and it has failed to explain why it could not have done so. *See Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1099 (9th Cir. 2021) (denying request to judicially notice copy of website because it "was never presented to the district court, and the relevant record on appeal is the record before the district court"); *Kohn Law Grp. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1241 (9th Cir. 2015) ("It is rarely appropriate for an appellate court to take judicial notice of facts that were not before the district court." (citation omitted)).

2. Even with this evidence, OCM's argument that its goods differed materially from LWI's gray-market goods cannot get off the ground. *See Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1092-93 (9th Cir. 2013) (citing McCarthy on Trademarks and Unfair Competition § 29:51.75 (5th ed.)) (a defendant is not liable for trademark infringement if its gray-market goods are "genuine," meaning that they do "not materially differ from the U.S. trademark owner's product" from the standpoint of a consumer). The uncontradicted evidence in the record shows that the parties' goods were virtually identical in terms of packaging, taste, quality, and safety. While the milk in the parties' tea products was sourced from different countries, even OCM's own evidence indicates that "there [was] no concern [about] the safety and quality" of the products containing milk from China. Further, it is

2

undisputed that some of the products at issue in this case did not contain any milk or dairy components.

For the products that do contain milk, OCM claims that the difference in where the milk is sourced from is material to consumers because the United States Department of Agriculture (USDA) has designated Australia and New Zealand, but not China, as free of foot-and-mouth disease. But OCM has failed to support this assertion with evidence sufficient to meet its summary-judgment burden. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Although there is a cursory declaration in the record from the manufacturer's business manager suggesting that milk from China was subject to a different regulatory regime than milk from Australia or New Zealand at relevant times, the district court correctly noted that the declaration lays no "proper foundation" indicating that the business manager had the knowledge necessary to give such a "legal opinion." *See, e.g.*, *Hill v. Walmart Inc.*, 32 F.4th 811, 822 (9th Cir. 2022) (explaining that inadmissible evidence may not be considered at summary judgment).

OCM argues that there is evidence that LWI's products failed to comply with USDA safety regulations regarding foot-and-mouth disease because, in August and September 2019, two shipments of LWI's products were seized and destroyed by the USDA. The only reason given for the seizures in the "emergency action notifications" prepared by the agency was that the beverages "did not meet entry

3

requirements as per 9 CFR 94." 9 C.F.R. part 94 is a detailed, lengthy regulation with 34 separate sections, and the USDA provided no details on which section was violated. At bottom, there is no way of determining *which* part of the regulation—if any[1]—was violated in light of the extremely limited facts in the record. Because it is undisputed that most of LWI's goods were imported without incident, it is possible that there was a problem specific to these two shipments, or that the goods were flagged for a simple technical violation, *see, e.g.*, 9 C.F.R. § 94.27 (2016)[2] (containing technical requirements for imports, such as "serial numbers" on packaging and notifications to the government about the time, place, and manner of arrival of the goods). While we must view the evidence favorably to OCM and draw inferences from that evidence in OCM's favor, the record here permits us to do no more than speculate as to what the true reasons for the seizures were. *See Anderson*, 477 U.S. at 255; *see also T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987) ("there must be some limit on the extent of the inferences that may be drawn in the nonmoving party's favor"). That will not do at the summary judgment stage. *See Hill*, 32 F.4th at 818.

---

[1] LWI contends that the seizure was erroneous, and that it chose not to contest the seizure only because it had already decided to discontinue sales of the products at issue.

[2] *Reserved by* 86 Fed. Reg. 68834, 68862 (effective Jan. 3, 2022).

Finally, to the extent OCM argues that a regulatory violation in itself is presumptively material to consumers—even in the absence of direct evidence of consumer preferences, evidence that the relevant goods are made using different techniques, or evidence that the goods differ nutritionally in any way—its argument is not supported by case law. *Cf. Hokto*, 738 F.3d at 1094 (holding that Japanese mushroom products differed materially where only one set of mushrooms was grown to meet "U.S. Certified Organic standards," *and* the plaintiffs had "submitted uncontradicted evidence that certified organic status is more important to American consumers than to Japanese consumers").

3.      The district court also did not abuse its discretion in concluding that this was an "exceptional case" warranting an award of attorney fees in LWI's favor. *See* 15 U.S.C. § 1117(a); *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180-81 (9th Cir. 2016) (en banc) (per curiam). The district court awarded fees to LWI based on its finding that, even at the summary judgment stage, OCM's claims were supported by a "near total lack of material evidence or substantive legal authority." The district court was permitted to consider the objective reasonableness of OCM's claim, and its finding that the claim is factually and legally unreasonable is not irrational or unsupported by the record. *See id.* (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)); *United States v. Hinkson*, 585 F.3d 1247, 1261 (9th Cir. 2009) (en banc). As the district court explained, OCM

5

has offered almost no meaningful evidence that its products differed from LWI's. What little evidence OCM did provide regarding the different sources of milk was severely deficient, and was unsupported by any relevant evidence showing that this difference was material to consumers. Contrary to OCM's assertions, the relatively low amount in controversy in this case does not excuse OCM's failure to meet its summary-judgment burden.

**AFFIRMED**