# IN THE SUPREME COURT OF CALIFORNIA

GUSTAVO NARANJO et al.,
Plaintiffs and Appellants,

v.

SPECTRUM SECURITY SERVICES, INC.,
Defendant and Appellant.

S279397

Second Appellate District, Division Four
B256232

Los Angeles County Superior Court
BC372146

---

May 6, 2024

Justice Kruger authored the opinion of the Court, in which Acting Chief Justice Evans and Justices Corrigan, Liu, Groban, Jenkins, and Rodriguez* concurred.

---

_____

\* Associate Justice of the Court of Appeal, First Appellate District, Division Three, assigned pursuant to article VI, section 6 of the California Constitution.

NARANJO v. SPECTRUM SECURITY SERVICES, INC.

S279397

Opinion of the Court by Kruger, J.

California law requires employers to provide their employees with written wage statements listing gross and net wages earned, hourly pay rates, hours worked, and other employment-related information. (Lab. Code, § 226.) If a claimant demonstrates that an employer has failed to comply with this requirement, the claimant is entitled to an injunction compelling compliance and an award of costs and reasonable attorney's fees. (*Id.*, subd. (h).) But in the case of a "knowing and intentional failure . . . to comply," the law provides for statutory penalties of up to $4,000 or the employee's actual damages, should the employee's damages exceed the statutory penalties. (*Id.*, subd. (e)(1).) The question presented is whether an employer has knowingly and intentionally failed to comply with section 226's requirements when the employer had a good faith, yet erroneous, belief that it was in compliance.

This case returns to us after we resolved a division in state and federal courts about whether the law requires employers to treat certain amounts — premium pay awarded for the deprivation of a lawful meal or rest break — as wages earned for purposes of provisions penalizing the willful failure to timely pay wages to former employees (Lab. Code, § 203) and the knowing and intentional failure to report wages earned in compliance with Labor Code section 226. Answering that question in the affirmative, we held that employers are required to treat missed-break premium pay as wages. We remanded for

1

consideration of whether the requirements for imposing penalties were otherwise satisfied.

On remand, the answer to the question of Labor Code section 203 penalties was clear. Under long established law, an employer cannot incur civil or criminal penalties for the willful nonpayment of wages when the employer reasonably and in good faith disputes that wages are due. (See *In re Trombley* (1948) 31 Cal.2d 801, 808; *Barnhill v. Robert Saunders & Co.* (1981) 125 Cal.App.3d 1, 8–9; see also Cal. Code Regs., tit. 8, § 13520.) But courts are divided over whether an employer's good faith belief will also bar Labor Code section 226 penalties for a knowing and intentional failure to report the same unpaid wages, or any other required information, on a wage statement. We now conclude that if an employer reasonably and in good faith believed it was providing a complete and accurate wage statement in compliance with the requirements of section 226, then it has not knowingly and intentionally failed to comply with the wage statement law. We affirm the judgment of the Court of Appeal, which reached the same conclusion.

## I.

We have previously recounted the factual and procedural background of this case. (*Naranjo v. Spectrum Security Services, Inc.* (2022) 13 Cal.5th 93, 102–104 (*Naranjo III*).) We restate the central facts here, adding further background relevant to the issue now before us.

Defendant Spectrum Security Services, Inc. (Spectrum) provides secure custodial services to federal agencies. Spectrum transports and guards prisoners and detainees who require outside medical attention or have other appointments outside custodial facilities. Plaintiff Gustavo Naranjo worked as a

guard for Spectrum. Naranjo was suspended and later fired after leaving his post to take a meal break, in violation of a Spectrum policy that required custodial employees to remain on duty during all meal breaks. (*Naranjo III*, *supra*, 13 Cal.5th at pp. 102–104.)

Naranjo filed a putative class action on behalf of Spectrum employees, alleging, among other things, that Spectrum had violated state regulations governing meal breaks. (Lab. Code, § 226.7 (section 226.7); Industrial Welf. Com. (IWC) wage order No. 4-2001, § 11.) The complaint sought an additional hour of pay — known as "premium pay" — for each day on which Spectrum failed to provide employees a legally compliant meal break. (See § 226.7, subd. (c); IWC wage order No. 4-2001, §§ 11(B), 12(B).) The complaint further alleged two additional Labor Code violations related to Spectrum's premium pay obligations: (1) that Spectrum had violated Labor Code sections 201, 202, and 203 by failing to timely pay owed meal break premiums as wages to employees once they were discharged or resigned; and (2) that Spectrum had violated Labor Code section 226 (section 226) by failing to report the premium pay it owed as wages on employees' wage statements. Among other forms of relief, the complaint sought the statutory penalties prescribed for "willful[]" failure to comply with the timely payment requirements (Lab. Code, § 203 (section 203), subd. (a)), and the penalties prescribed for the "knowing and intentional" failure to comply with the wage statement requirements (§ 226, subd. (e)(1)).

In the approximately decade and a half since it was filed, the case has taken a number of turns up and down the court system. The details of its extensive procedural history are not strictly necessary to understand the issues now before us, except

as they illuminate the scope and nature of the many debates that have surfaced about Spectrum's liability for Naranjo's meal break claims.

At first, the trial court granted summary judgment for Spectrum, ruling that Naranjo's sole remedy lay in a federal administrative claim procedure for employees of federal contractors. The Court of Appeal disagreed and reversed. (*Naranjo v. Spectrum Security Services, Inc.* (2009) 172 Cal.App.4th 654, 663, 670 (*Naranjo I*).)

On remand, the trial court certified a class for the meal break and related timely payment and wage statement claims and held a trial in three phases. (*Naranjo III*, *supra*, 13 Cal.5th at p. 103; *Naranjo v. Spectrum Security Services, Inc.* (2023) 88 Cal.App.5th 937, 942 (*Naranjo IV*).) The first phase was a bench trial where Spectrum presented certain affirmative defenses. In particular, Spectrum argued that California meal break requirements did not apply to the class members because they were performing federal functions and because many of them worked on federal properties outside the reach of state regulation. (*Naranjo IV*, at p. 942.) At the end of the first phase, the trial court held that Spectrum failed to carry its burden to establish any of these defenses. (*Ibid.*)

In the second phase, the section 226.7 meal break claims were tried to a jury. (*Naranjo IV*, *supra*, 88 Cal.App.5th at p. 942.) The relevant IWC wage order, wage order No. 4-2001, requires employers to give covered employees an off-duty meal period on shifts lasting over five hours. (*Ibid.*, citing IWC wage order No. 4-2001, § 11(A) and *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1034.) Wage order No. 4-2001 recognizes an exception to the off-duty meal period

4

requirement that "allows for ' "on duty" ' meal periods if 'the nature of the work prevents an employee from being relieved of all duty,' but only when 'by written agreement between the parties an on-the-job paid meal period is agreed to.' " (*Naranjo IV*, at p. 942.) The trial court agreed with Naranjo that Spectrum did not have a valid written on-duty meal break agreement with its employees during part of the class period and directed a verdict for the class on the meal break claim for a period starting in June 2004 and ending in September 2007. (*Ibid.*) The jury, however, found Spectrum not liable for the period starting on October 1, 2007, after Spectrum had issued a memorandum setting forth its on-duty meal break policy and obtained written consent to that policy from employees. (*Ibid.*)

In the third phase of the trial, the court considered the class's claims under section 203 and section 226. (*Naranjo III*, *supra*, 13 Cal.5th at p. 103.) Spectrum argued that it was not liable under section 203 and section 226 because premium pay awarded under section 226.7 is not "wages" subject to these statutory timing and reporting requirements, but instead a penalty for break violations. Spectrum also argued that even if it had violated an obligation to timely pay and report the premium pay owed, its failure to comply was neither "willful" for purposes of awarding section 203 penalties nor "knowing and intentional" for purposes of awarding section 226 penalties. Spectrum argued that the class could not recover section 203 penalties because it had raised several reasonable defenses in good faith, which, according to Division of Labor Standards Enforcement (DLSE) regulations and governing appellate case law, precluded a finding that it "willfully" failed to pay premium pay upon separation. (§ 203, subd. (a); see Cal. Code Regs., tit. 8, § 13520; *Barnhill v. Robert Saunders & Co.*, *supra*, 125

Cal.App.3d at pp. 8–9 (*Barnhill*).) Spectrum argued that its failure to comply with section 226's reporting requirements likewise was not "knowing and intentional." Among other things, Spectrum cited the testimony of John Oden, its Vice President and Personnel Manager, who stated that he "was not aware that there was any obligation to pay an extra hour of pay if Spectrum officers did not get an off-duty meal break."

The trial court found that Spectrum had, in fact, violated sections 203 and 226 by failing to pay and report the missed-break premium pay as wages in accordance with those provisions. But the court issued a split decision on the question of penalties. With respect to section 203 penalties, the court ruled in Spectrum's favor. The court found that "Spectrum's defenses presented in the first phase of the trial . . . , if successful, would have defeated plaintiffs' claims in their entirety" and that those defenses "were presented in good faith and were not unreasonable or unsupported by the evidence." Thus, under DLSE regulations and governing case law, Spectrum's failure to timely pay the premiums was not willful. But with respect to section 226 penalties, the court ruled against Spectrum. The trial court found that Spectrum was liable for penalties because its failure to report premium pay for missed meal breaks in employees' wage statements was "knowing and intentional and not inadvertent."

Both sides appealed the trial court's ruling. The Court of Appeal affirmed the trial court's holding that Spectrum had violated meal break laws between June 2004 and September 2007. But it reversed the trial court's holding that Spectrum had violated section 203 and section 226 by failing to timely pay and report the meal break premium pay owed as "wages," reasoning that the premium pay was instead in the nature of a

penalty rather than compensation for work performed. (*Naranjo v. Spectrum Security Services, Inc.* (2019) 40 Cal.App.5th 444, 474 (*Naranjo II*).)

Because the Court of Appeal's decision deepened a conflict on this issue, we granted review to decide whether section 203 and section 226 claims can be brought based on unpaid and unreported missed-break premium pay. (*Naranjo III*, *supra*, 13 Cal.5th at p. 104.) We answered that question in the affirmative. We held: "Missed-break premium pay is indeed wages subject to the Labor Code's timely payment and reporting requirements, and it can support section 203 waiting time penalties and section 226 wage statement penalties where the relevant conditions for imposing penalties are met." (*Id.* at p. 125.) We thus reversed the decision of the Court of Appeal. But because the Court of Appeal had not addressed the parties' arguments as to whether the relevant conditions for imposing penalties under sections 203 and 226 were met, we remanded for the Court of Appeal to consider the parties' arguments on that issue. (*Naranjo III*, at p. 126.)

This brings us to the decision now before us on review. On remand from this court, the Court of Appeal affirmed the trial court's conclusion that Spectrum's failure to timely pay meal period premium wages was not "willful," and therefore did not support penalties under section 203, because substantial evidence supported the conclusion that Spectrum had a good faith basis for believing it was not liable. (*Naranjo IV*, *supra*, 88 Cal.App.5th at p. 948.)

The Court of Appeal held, however, that the trial court erred in finding that Spectrum's failure to report meal premium pay on employees' wage statements was " 'knowing and

intentional.' " (*Naranjo IV*, *supra*, 88 Cal.App.5th at p. 951.)
The Court of Appeal reasoned that the section 203 "willfulness"
requirement and the section 226 "knowing and intentional"
requirement are substantially identical, so the same finding of
good faith that precluded an award of penalties under section
203 should also preclude an award of penalties under section
226. (*Naranjo IV*, at pp. 949–951.) It further noted that, "[i]n
addition to the trial court's finding that a good faith dispute
existed regarding whether premium pay was owed, . . . there
was a good faith dispute regarding whether premium pay
constituted 'wages' that must be reported on wage statements,"
which was unsettled until this court decided *Naranjo III* in
2022. (*Id.* at p. 951, fn. 8.)

As the Court of Appeal acknowledged, the issue has
divided the many state appellate courts and federal district
courts that have considered it. The Court of Appeal in this case
aligned itself with "the majority view" among federal district
courts "that an employer's good faith belief it is not violating the
California Labor Code precludes a finding of a knowing and
intentional violation" of section 226. (*Naranjo IV*, *supra*, 88
Cal.App.5th at p. 950; *Oman v. Delta Air Lines, Inc.* (N.D.Cal.
2022) 610 F.Supp.3d 1257, 1273–1275 (*Oman II*); *Arroyo v. Int'l
Paper Co.* (N.D.Cal. 2020) 611 F.Supp.3d 824, 840–842;
*Magadia v. Wal-Mart Associates, Inc.* (N.D.Cal. 2019) 384
F.Supp.3d 1058, 1084, revd. in part, vacated in part on other
grounds (9th Cir. 2021) 999 F.3d 668.) "To hold otherwise would
'read *out* of [section] 226[, subdivision] (e) the mental state
implicated by the phrase "knowing and intentional." ' "
(*Naranjo IV*, at p. 951, quoting *Arroyo*, at p. 841.)

As the Court of Appeal recognized, a smaller group of
federal district courts have reached a different conclusion.

(*Naranjo IV*, *supra*, 88 Cal.App.5th at p. 951, citing *Greenlight Sys., LLC v. Breckenfelder* (N.D.Cal., June 28, 2021, No. 19-cv-06658-EMC) 2021 WL 2651377 at p. *13, 2021 U.S.Dist. Lexis 120288 at p. *39.) So have other Courts of Appeal. These courts have concluded that a violation is " 'knowing and intentional' " if the employer is aware of the " ' "factual predicate" ' " underlying the violation — for instance, that it has not reported certain information on an employee's wage statement — regardless of whether the employer believes in good faith that it has complied with the law. (*Furry v. East Bay Publishing, LLC* (2018) 30 Cal.App.5th 1072, 1085 (*Furry*); *Kao v. Holiday* (2017) 12 Cal.App.5th 947, 961–962 (*Kao*); *Gola v. University of San Francisco* (2023) 90 Cal.App.5th 548 (*Gola*).)[1]

We granted Naranjo's petition for review to resolve the conflict.

## II.

## A.

The wage statement statute, section 226, was added to the Labor Code in 1943. (Stats. 1943, ch. 1027, § 1, p. 2965.) In its

---

[1] The Court of Appeal in this case distinguished *Furry* and *Kao* on the ground that those cases had rejected a defense to section 226 penalties when employers argue ignorance of the law, whereas here Spectrum argues that it believed in good faith that it was complying with the law. (*Naranjo IV*, *supra*, 88 Cal.App.5th at p. 951, fn. 7.) This distinction appears to rest on a misreading of *Furry* and *Kao*, both of which clearly reject a good faith (and not merely ignorance-based) defense.

The decision in *Gola*, *supra*, 90 Cal.App.5th 548, issued after the Court of Appeal's decision in this case. It expressly considered and rejected the Court of Appeal's decision, instead siding with *Furry* and *Kao*. (*Id.* at pp. 566–567.)

original form, section 226 simply required employers to provide an itemized statement of deductions from wages. Section 226 has since been amended numerous times. The statute currently in force contains detailed requirements for the content of wage statements, including requirements to report an employee's hours worked, wages earned, hourly rates, and employer- and employee-identifying information. (§ 226, subd. (a).)

As initially enacted, the statute contained no express specification of remedies available to private plaintiffs. At first, enforcement of the provision was left to the DLSE under its general authorization to enforce labor laws. (See Lab. Code, § 95.) But in 1976, the Legislature added the provision at issue in this case, prescribing statutory penalties for knowing and intentional violations. (Stats. 1976, ch. 832, § 1, pp. 1899–1900; see *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1108 ["In section 226, the Legislature imposed a penalty on employers who fail to provide itemized wage statements that comply with the Labor Code. (§ 226, subd. (e) [$50 for initial violation, $100 for subsequent violations].)"].) That provision, as amended, now provides: "An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) [requiring provision of wage statements containing specified information] is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees." (§ 226, subd. (e)(1).) (To "suffer injury" within the meaning of this provision is not quite what it sounds like; an employee is deemed to be injured if the

employer either fails to provide any wage statement or if it provides a wage statement that fails to provide "accurate and complete information" about certain items such that the employee "cannot promptly and easily determine from the wage statement alone" certain specified wage-related information. (*Id.*, subd. (e)(2)(A), (B).))

In 1984, the Legislature added another enforcement provision, Labor Code section 226.6, that makes the knowing and intentional violation of section 226 a misdemeanor offense: "Any employer who knowingly and intentionally violates the provisions of Section 226, or any officer, agent, employee, fiduciary, or other person who has the control, receipt, custody, or disposal of, or pays, the wages due any employee, and who knowingly and intentionally participates or aids in the violation of any provision of Section 226 is guilty of a misdemeanor" and faces fines of up to $1,000, imprisonment of up to one year, or both, "in addition to any other penalty provided by law." (Lab. Code, § 226.6, added by Stats. 1984, ch. 1490, § 3, p. 5218 and amended by Stats. 2010, ch. 328, § 150.5, pp. 1718–1719.)

The statute does not define what constitutes a "knowing and intentional" violation. But in 2012, the Legislature added a provision specifying what a "knowing and intentional" violation *is not:* "For purposes of this subdivision, a 'knowing and intentional failure' does not include an isolated and unintentional payroll error due to a clerical or inadvertent mistake. In reviewing for compliance with this section, the factfinder may consider as a relevant factor whether the employer, prior to an alleged violation, has adopted and is in compliance with a set of policies, procedures, and practices that fully comply with this section." (§ 226, subd. (e)(3), added by Stats. 2012, ch. 843, § 1, p. 6629.)

Whether or not a violation is knowing and intentional, the statute makes clear that "[a]n employee may also bring an action for injunctive relief to ensure compliance with this section, and is entitled to an award of costs and reasonable attorney's fees." (§ 226, subd. (h), formerly subd. (g), added by Stats. 2002, ch. 933, § 1, p. 5903.) This provision means that any plaintiff who establishes a section 226 violation is entitled to costs and attorney's fees, as well as an injunction compelling future compliance. The question before us concerns only the circumstances under which a plaintiff is entitled to statutory penalties in addition to these other forms of relief, based on a "knowing and intentional failure by an employer to comply with [section 226,] subdivision (a)." (§ 226, subd. (e)(1).)

## B.

The question revolves around the mental element, or scienter, specified in section 226's penalty provision: What must be shown to demonstrate "a knowing and intentional failure by an employer to comply with [section 226,] subdivision (a)" (§ 226, subd. (e)(1))? The Courts of Appeal and federal district courts that have addressed this issue have taken two divergent approaches, as do the parties now before us. Under the approach that Naranjo advocates, courts determine whether an employer's failure to comply with wage statement requirements was knowing and intentional by asking whether the employer was aware of the "factual predicate" constituting the violation. Under this test, a failure to comply with section 226 is knowing and intentional if the employer was aware of the underlying facts giving rise to its violation of section 226, subdivision (a) and the violation was not the product of a clerical error or inadvertent mistake. (See, e.g., *Gola*, *supra*, 90 Cal.App.5th at p. 566, citing *Furry*, *supra*, 30 Cal.App.5th at p. 1085, and *Kao*,

*supra*, 12 Cal.App.5th at pp. 961–962.) Here, according to Naranjo, Spectrum's failures to comply with section 226 were knowing and intentional because Spectrum knew that it did not provide guards with off-duty meal breaks, that it did not pay meal premiums for missed breaks, and that it did not report missed breaks and unpaid meal premiums on wage statements. It is irrelevant, in Naranjo's view, whether Spectrum knew or should have known that the law required it to do any of these things.

Spectrum, for its part, argues that the plain meaning of the phrase "knowing and intentional failure to comply" requires a showing that the employer knew that it was required to include certain information in wage statements — here, unpaid premium pay for missed meal breaks — and nevertheless intentionally omitted that information from the wage statements that it provided. Spectrum argues that it is not liable for penalties under that provision because it had a reasonable, good faith basis for believing (1) that it did not owe its guards premium pay for missed breaks and (2) that it was not, in any event, obligated to report missed-break premium pay on wage statements. Both of these questions were ultimately decided against Spectrum after years of litigation, but Spectrum contends penalties are not warranted because it had a reasonable basis at the time for believing the law was otherwise.

In everyday life and in the law both, the word "knowing" is generally used to mean "done with awareness or deliberateness" or "intentional." (Webster's 3d New Internat. Dict. (2002) p. 1252; see also Black's Law Dict. (4th rev. ed. 1968) p. 1012, col. 1 [defining "knowingly" as "[w]ith knowledge; consciously; intelligently; willfully; intentionally"].) The word "intentional," for its part, generally means "done by intention,"

which "simply indicates what one proposes to do or accomplish." (Webster's 3d New Internat. Dict., *supra,* p. 1176; see also Black's Law Dict., *supra,* p. 947, col. 2 [defining "intent" as "[d]esign, resolve, or determination with which person acts"; "purpose to use particular means to effect certain result"; "the exercise of intelligent will, the mind being fully aware of the nature and consequences of the act which is about to be done, and with such knowledge, and with full liberty of action, willing and electing to do it"]; *id.* at p. 948, col. 1 [similarly defining "intention" as "[d]etermination to act in a certain way or to do a certain thing"; "[m]eaning; will; purpose; design"].) Both parties' arguments understand the terms in these generally accepted senses. The critical debate between them concerns not so much what the terms "knowing" and "intentional" mean, but what the terms modify. That is to say, *what*, precisely, must be done knowingly and intentionally: violating the law, or the acts or omissions constituting the violation?

On its face, the statute might appear to answer the question: It is the "failure to comply" with the law that must be knowing and intentional — not simply the act of issuing a wage statement that omits certain information that the law, properly interpreted, requires to be included. The wording of the penalty provision, which connects the employer's culpable state of mind to a violation of the law, is reasonably read to excuse intentional acts or omissions that are based on a reasonable, good faith mistake about what compliance with the law requires. (See, e.g., *Safeco Ins. Co. of America v. Burr* (2007) 551 U.S. 47, 68–70 [the phrase "willfully fails to comply with any requirement imposed under this subchapter" (15 U.S.C. § 1681n(a)) in the federal Fair Credit Reporting Act applies where the defendant either knew it was violating the statute or showed reckless

disregard for whether it was in compliance]; *McLaughlin v. Richland Shoe Co.* (1988) 486 U.S. 128, 129 [same, for the phrase " 'arising out of a willful violation' " in the Fair Labor Standards Act]; *Trans World Airlines, Inc. v. Thurston* (1985) 469 U.S. 111, 125 (*Thurston*) [same, for the damages provision in the Age Discrimination in Employment Act (ADEA), which applies " 'only in cases of willful violations' "]; see also *Rehaif v. United States* (2019) 588 U.S. ___ [139 S.Ct. 2191, 2200] (*Rehaif*) [sentencing provision applicable to anyone who "knowingly violates" (18 U.S.C. § 924(a)(2)) the federal prohibition on firearm possession by convicted felons and other legally prohibited persons requires proof "both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm"]; *Liparota v. United States* (1985) 471 U.S. 419, 428 (*Liparota*) [prohibition on use of food stamps " '*knowing* [them] to have been received . . . in violation of' " federal law requires that the defendant knew of the illegality].)[2]

Naranjo's contrary understanding is also reasonable, however. There is no hard-and-fast rule that any mental state requirement deployed in connection with the words "failure to comply" or "violation" necessarily connotes a requirement that

---

[2] Throughout this opinion, we refer to interpretations of mens rea terms in criminal statutes, as well as in civil statutes, to illustrate certain general propositions. The specific question before us, however, concerns only the availability of civil penalties in the Labor Code. We do not suggest that cases elaborating mens rea principles in the criminal context are necessarily determinative in the interpretation of civil provisions like the one before us. Nor, certainly, is our discussion intended to upset settled interpretations of criminal mens rea provisions.

the defendant appreciate the illegality of what it has done or failed to do.[3] (See *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich L.P.A.* (2010) 559 U.S. 573, 585 (*Jerman*); *id.* at pp. 582–583 [federal Fair Debt Collection Practices Act defense for a debt collector who can show its "violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error" (15 U.S.C. § 1692k(c)) applies to mistakes of fact, but not mistakes about what the law requires]; see also, e.g., *Bryan v. United States* (1998) 524 U.S. 184, 193 [in the context of a criminal statute, "unless the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense" (fn. omitted)].) Ultimately the issue here cannot be decided based on the plain text, read in isolation, but on careful construction of the words of the penalty provision "in their particular statutory context." (*Jerman*, at p. 585.)

Two features of this context are particularly relevant here, and lead us to conclude that section 226, subdivision (e)(1) is best read to allow for a defense based on good faith belief in compliance. First, the operative "knowing and intentional" language does not appear in a liability provision, but in a penalty provision. In other words, the purpose of asking

---

[3] To be clear, neither is there a hard-and-fast rule that any mental state requirement deployed in connection with the description of a particular act necessarily precludes consideration of whether the defendant appreciates the illegality of the conduct. Our decision in *In re Trombley*, *supra*, 31 Cal.2d 801 (*Trombley*), discussed below, is a case in point. (See *id.* at p. 808 [criminal statute punishing "willful" failure to pay wages is inapplicable where the defendant disputes in good faith that wages are due].)

whether the employer has knowingly and intentionally failed to comply with the requirements of section 226 is not to determine whether or not the employer has, in fact, violated the statute. There is no doubt that an employer who issues incomplete wage statements is not complying with the statute, and an employee who can so demonstrate in court is entitled to remedies consisting of injunctive relief, costs, and reasonable attorney's fees. (§ 226, subd. (h).) The question is only whether the employee is also entitled to an additional monetary remedy in the nature of penalties for knowing and intentional noncompliance.

As a general rule, "courts refuse to impose civil penalties against a party who acted with a good faith and reasonable belief in the legality of his or her actions." (*Lusardi Construction Co. v. Aubry* (1992) 1 Cal.4th 976, 996–997 [addressing civil penalties for violations of the prevailing wage statute for employees working on public work projects (Lab. Code, § 1775), citing *Whaler's Village Club v. California Coastal Com.* (1985) 173 Cal.App.3d 240, 263, and *No Oil, Inc. v. Occidental Petroleum Corp.* (1975) 50 Cal.App.3d 8, 30].) If an injured party is fully compensated, penalties will generally not be imposed unless "there has been a grossly negligent, willful or fraudulent breach of a duty." (*Lusardi*, at p. 996.) Much like punitive damages, civil penalties are frequently aimed at some " 'positive element of conscious wrongdoing' " or bad faith. (*Kolstad v. American Dental Assn.* (1999) 527 U.S. 526, 538 (*Kolstad*), quoting McCormick, Law of Damages (1935) § 79, p. 280; cf. *Halo Electronics, Inc. v. Pulse Electronics, Inc.* (2016) 579 U.S. 93, 105 ["The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages"]; *Thurston, supra*, 469 U.S. at p. 125 [liquidated damages, which

are "punitive in nature," are imposed " 'only in cases of willful violations' " of the ADEA].)

That is because the purpose of imposing civil penalties is typically, as with punitive damages, not primarily to compensate, but to deter and punish. (See, e.g., *Kwan v. Mercedes-Benz of North America, Inc.* (1994) 23 Cal.App.4th 174, 184 [stating that civil penalties under the Song-Beverly Consumer Warranty Act, "like other civil penalties, [are] imposed as punishment or deterrence of the defendant, rather than to compensate the plaintiff"]; *Troensegaard v. Silvercrest Industries, Inc.* (1985) 175 Cal.App.3d 218, 226–228 [agreeing with the defendant that awarding punitive damages in addition to civil penalties constitutes improper double punishment because the two remedies serve similar functions].) Those who proceed on a reasonable, good faith belief that they have conformed their conduct to the law's requirements do not need to be deterred from repeating their mistake, nor do they reflect the sort of disregard of the requirements of the law and respect for others' rights that penalty provisions are frequently designed to punish. (See, e.g., *People v. Nunn* (1956) 46 Cal.2d 460, 468 [" 'good faith' " is "ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation"]; see also *Pugh v. See's Candies, Inc.* (1988) 203 Cal.App.3d 743, 764 [quoting approvingly Merriam-Webster's similar definition of "good faith" as, inter alia, " 'a state of mind indicating honesty and lawfulness of purpose: . . . belief that one's conduct is not unconscionable . . . absence of fraud, deceit, collusion, or gross negligence' "].)

That section 226, subdivision (e)(1)'s "knowing and intentional" requirement defines a condition for imposing

penalties, not finding liability, distinguishes this case from a case like *Jerman.* That case concerned whether a defendant could be held liable but not, as here, *how* the defendant is to be held liable. (See *Jerman, supra,* 559 U.S. at pp. 581–583; 15 U.S.C. § 1692k(c) ["A debt collector *may not be held liable* in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional" (italics added)].)

This case more closely resembles cases like *Thurston, supra,* 469 U.S. 111, in which the high court concluded that, to be responsible for liquidated damages based on a " 'willful' " violation of the ADEA, the defendant must know that its conduct violates the ADEA or else act in reckless disregard of that law (*id.* at pp. 125, 128–129), or *Kolstad, supra,* 527 U.S. 526, in which the court held that a punitive damages provision applicable when the employer violated federal antidiscrimination law "with 'malice or with reckless indifference to the [employee's] federally protected rights' " trains attention on "the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination" (*id.* at p. 535, italics omitted). Any employer that fails to comply with section 226 can be the subject of a DLSE enforcement action under Labor Code section 95 or a private suit for injunctive relief under section 226, subdivision (h), regardless of whether its noncompliance is "knowing and intentional." Statutory penalties under section 226, subdivision (e)(1), on the other hand, only come into play when the employer not only fails to comply, but does so knowingly and intentionally. When a statute imposes a two-tier remedial structure, with steeper penalties based on the employer having knowingly and intentionally violated the law, it is reasonable to infer that the

Legislature intended for the provision to target those who knowingly and intentionally flout the wage statement law, and not those who have made good faith mistakes about what the law requires.[4]

The second, and equally critical, contextual consideration concerns the relationship between section 226 and other provisions of the Labor Code. Section 226 wage statement violations may be raised as freestanding claims. But as this case illustrates, they are more typically raised as derivative claims of other Labor Code claims concerning rates of pay and the wages owed for labor — i.e., the substance of the transactions that section 226 requires to be documented on an itemized statement furnished to the employee. Employees will often argue that an employer failed to pay them certain amounts to which they were entitled — missed-break premium pay or overtime, for instance — and on that basis will allege both claims for failure to promptly pay wages under section 203 and, relatedly, failure to report wages earned under section 226. What this means in practice is that an employer's good faith

---

[4]  Misdemeanor liability for wage statement violations similarly attaches only when an employer "knowingly and intentionally violates the provisions of Section 226." (Lab. Code, § 226.6.) Naranjo makes no effort to distinguish this provision governing criminal liability from section 226, subdivision (e)(1). Indeed, Naranjo's counsel conceded at oral argument that adopting his position would spell potential criminal liability for employers that fail to comply with wage statement requirements based on a reasonable, good faith misunderstanding of their obligations. We do not address that question here, except to observe that it seems likewise unlikely that the Legislature intended to prescribe criminal punishment for employers that make good faith mistakes about the requirements of the wage statement law.

mistake about whether certain amounts are owed to a particular employee will frequently give rise to at least two different causes of action and associated remedies. In *Naranjo III*, we dispelled any doubt there might have been about the permissibility of bringing this sort of derivative wage statement claim when we explained that the wage statement requirements apply to amounts *earned*, even if those amounts were not paid because of confusion over whether the amounts were owed in the first place. (See *Naranjo III*, *supra*, 13 Cal.5th at p. 121.)

Because claims for failure to make timely payment of wages and failure to report wages earned so often go hand in hand, it is useful to compare the timely payment cause of action and the remedies it makes available. Much like section 226, subdivision (e)(1), the timely payment provisions contain penalties for late payment based on a heightened mental state requirement: "If an employer *willfully* fails to pay, without abatement or reduction, . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced" for a maximum of 30 days. (§ 203, subd. (a), italics added.)

This penalty provision was enacted in 1937. (Stats. 1937, ch. 90, § 203, p. 197.) In the decades that have passed since, the authorities have uniformly recognized a good faith defense to section 203 "waiting time" penalties. The Court of Appeal gestured to such a defense in *Davis v. Morris* (1940) 37 Cal.App.2d 269, in which the members of a mining partnership appealed an award of waiting time penalties against them on the ground that "the failure to pay the wages was not 'wilful' since, in good faith, [they] believed they were not due to the [plaintiff] who contributed his services as a member of the

partnership." (*Id.* at p. 271.) The court rejected the members' argument based on the evidence, without questioning the premise that a good faith belief that wages were not owed to the plaintiff would preclude an award of penalties: "It was the sole province of the trial court to determine whether the defendants were in good faith in claiming that wages were not due because the plaintiff contributed his services as a member of the partnership." (*Id.* at p. 274.)

In 1948, this court construed Labor Code section 216, subdivision (a), which makes it a misdemeanor to "willfully refuse[] to pay wages due and payable after demand has been made," to incorporate a good faith defense. There, citing *Davis*, we held that this provision does not "make the mere failure to pay wages a crime, nor does it subject an employer to imprisonment who disputes in good faith an employee's claim for wages." (*Trombley*, *supra*, 31 Cal.2d at p. 808.) We noted that "[a] similar construction was placed on section 203 of the Labor Code which imposes penalties where an employer 'willfully fails to pay . . . wages of an employee who is discharged or who quits.' In interpreting that section, it was recognized that a dispute in good faith as to whether any wages were due would be a defense to an action for such penalties. (*Davis v. Morris*, [*supra*,] 37 Cal.App.2d 269 [99 P.2d 345].)" (*Trombley*, at p. 808.) In sum, we explained, Labor Code section 216 "makes it a crime for an employer having the ability to pay, knowingly and intentionally to refuse to pay wages which he knows are due." (*Trombley*, at pp. 807–808.)

Some decades later, the court in *Barnhill*, *supra*, 125 Cal.App.3d 1, also followed the suggestion in *Davis* in recognizing a good faith defense to section 203 penalties. But in *Barnhill*, unlike *Davis*, the defense succeeded. The employer in

*Barnhill* had withheld an employee's wages as a "setoff" to a debt that the employee owed the employer. (*Barnhill*, at p. 8.) Whether such withholding was unlawful was an unsettled question of law, as an equitable defense based on the setoff doctrine was plausible and "several Courts of Appeal had expressed the view that setoffs against employees' wages were proper." (*Ibid.*) Given the legal uncertainty, the *Barnhill* court concluded that "appellant should not be penalized for believing that setoff was proper and payment of wages not required" and its "attempt to exercise a right to setoff was not wilful nonpayment of wages." (*Ibid.*) Because the employer had acted in good faith, it had not acted willfully, and section 203 penalties were not appropriate even though the employer was ultimately mistaken about the lawfulness of its actions.

The rule of *Barnhill* has since been codified in DLSE regulations, which provide, in pertinent part: "A willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due. However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203." (Cal. Code Regs., tit. 8, § 13520.) Courts have likewise uniformly recognized a good faith defense to penalties under section 203. (See, e.g., *Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1204 (*Amaral*) ["So long as no other evidence suggests the employer acted in bad faith, presentation of a good faith defense, based in law or fact, will negate a finding of willfulness"]; *Diaz v. Grill Concepts Services, Inc.* (2018) 23 Cal.App.5th 859, 868 (*Diaz*) [relying on *Trombley*, *Barnhill*, and *Amaral* as setting the standards for willfulness and good faith but affirming the trial court's rejection of a good faith defense based on unexcused

ignorance of the law]; see also *Choate v. Celite Corp.* (2013) 215 Cal.App.4th 1460, 1468 ["an employer's reasonable, good faith belief that wages are not owed may negate a finding of willfulness"]; *Nordstrom Com. Cases* (2010) 186 Cal.App.4th 576, 584 ["There is no willful failure to pay wages if the employer and employee have a good faith dispute as to whether and when the wages were due"]; *Armenta v. Osmose, Inc.* (2005) 135 Cal.App.4th 314, 325 ["A good faith belief in a legal defense will preclude a finding of willfulness"]; *Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.* (2002) 102 Cal.App.4th 765, 782 ["An employer's good faith mistaken belief . . . may negate a finding of willfulness"].)

The parties dispute whether "knowing and intentional" connotes a materially different standard from "willful." There is some authority to support Naranjo's theory that the two mental state standards carry different presumptions about good faith mistakes about the law. (See, e.g., *Jerman*, *supra*, 559 U.S. at pp. 584–585.) But the most pertinent California case, *Trombley*, did not draw such a distinction, instead using the terms interchangeably: Though Labor Code section 216 speaks of a "willful" failure to pay wages, we understood that provision to punish an employer who, "having the ability to pay, *knowingly and intentionally* to refuse to pay wages which he *knows* are due." (*Trombley*, *supra*, 31 Cal.2d at pp. 807–808, italics added.) Before *Trombley*, other California authority had likewise recognized that "willfully" can denote a culpable mental state closely akin to knowledge and intent.[5] And several

_____

[5] In 1898, for instance, this court interpreted " 'willfully' " in a perjury statute as requiring proof that the defendant made a

provisions of the Labor Code not at issue here appear to reflect this long-established understanding that the terms "knowing," "intentional," and "willful" (and their adverbial forms) can be used interchangeably.[6]

---

statement "with the consciousness that he did not know that it was true, and with the intent that it should be received as a statement of what was true in fact." (*People v. Von Tiedeman* (1898) 120 Cal. 128, 135.) Early civil appellate cases show a similar understanding of "willfully" at work. In a number of insurance cases, the Court of Appeal concluded that, to void an insurance policy, an insured's inaccurate statement must be "willfully false" — that is, "must have been knowingly and intentionally made by the insured with knowledge of its falsity and with the intention of defrauding the company." (*Miller v. Fireman's Fund Ins. Co.* (1907) 6 Cal.App. 395, 398; accord, *Pedrotti v. American Nat. Fire Ins. Co., etc.* (1928) 90 Cal.App. 668, 671; *Shaw v. Imperial Mut. L. & B. Assn.* (1935) 4 Cal.App.2d 534, 537–538.) More generally, doing an act "willfully" has long been understood as doing it deliberately or by an affirmative, conscious choice: As the Court of Appeal put it over a century ago, the term " 'willful,' as ordinarily used in courts of law [means] merely that the thing done or omitted to be done was done or omitted intentionally," and "[i]t amounts to nothing more than this: That the person knows what he is doing, intends to do what he is doing, and is a free agent." (*May v. New York M. Picture Corp.* (1920) 45 Cal.App. 396, 404, citing *Benkert v. Benkert* (1867) 32 Cal. 467, 470 [explaining that "wilful" ordinarily means "intentional"] and *Towle v. Matheus* (1900) 130 Cal. 574, 577 [same].)

[6] Labor Code section 210, for example, provides penalties for violations of statutes that dictate when employees are to be paid. For initial violations, the penalty is $100 "for each failure to pay each employee." (Lab. Code, § 210, subd. (a)(1).) But for "any *willful or intentional* violation," the penalty is $200 "for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld." (*Id.*, subd. (a)(2), italics added; see also

Moreover, while Labor Code sections 203 and 216 speak of the willful failure *to pay*, section 226, subdivision (e)(1) speaks of the knowing and intentional *failure to comply with the law*. This choice reinforces the conclusion that section 226's penalty provision was designed to capture a concept similar to the one we articulated *Trombley* — that is, to avoid penalizing an employer who reasonably and in good faith disputes that it is required to report certain amounts as wages or otherwise disputes its obligation to craft its wage statements in a particular manner.

As a practical matter, because employees so often bring claims for violations of section 203 and section 226 that derive from the same primary violations of the Labor Code, the two penalty provisions are best read in a manner that harmonizes them rather than one that sets them at cross-purposes. (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 919 ["a statute should be interpreted ' "with reference to the whole system of law of which it is a part so that all may be harmonized and have effect," ' " quoting *Select Base Materials v. Board of Equal.* (1959) 51 Cal.2d 640, 645].) If

_____

*id.*, § 225.5, subd. (b) [similar penalties for "any willful or intentional violation"].) Labor Code section 6311.5, which imposes misdemeanor liability on anyone "who, after receiving notice to evacuate or leave, *willfully and knowingly* directs an employee to remain in, or enter, an area closed due to a menace to the public health or safety," links "willful" with "knowing." (Lab. Code, § 6311.5, subd. (a)(1), italics added; see also *id.,* §§ 1695.7, subd. (c)(3) ["knowingly and willfully"; misdemeanor provision], 6396, subd. (c) [same].) These examples suggest that "knowing," "intentional," and "willful" are used interchangeably in the Labor Code to denote a culpable mental state that warrants imposing harsher remedies such as steeper penalties and misdemeanor liability.

anything, as a number of federal district courts have observed, the case may be stronger for withholding penalties for inadequate wage statements when the employer demonstrates a good faith belief in its conduct's legality, as " 'failure to pay wages would seem to warrant lesser tolerance of defenses than failing to provide accurate wage statements.' " (*Oman II*, *supra*, 610 F.Supp.3d at p. 1275, quoting *Woods v. Vector Mktg. Corp.* (N.D.Cal., May 22, 2015, No. C-14-0264 EMC) 2015 WL 2453202 at p. *4, fn. 3.)  We see no sound reason why the Legislature would have wished to withhold penalties for nonpayment of wages when an employer "disputes in good faith an employee's claim for wages" (*Trombley*, *supra*, 31 Cal.2d at p. 808), and yet would have wished to impose penalties for failing to document those same earned but unpaid wages on an itemized wage statement.[7]  The most logical inference to draw from the

---

[7]  We are not persuaded by Naranjo's suggestion that this asymmetrical treatment would make sense because "all other remunerative sections of the labor code and wage orders depend on" compliance with section 226.  Certainly section 226 serves an important purpose, "which is 'to ensure an employer "document[s] the basis of the employee compensation payments" to assist the employee in determining whether he or she has been compensated properly.' " (*Oman v. Delta Air Lines, Inc.* (2020) 9 Cal.5th 762, 775 (*Oman I*), quoting *Soto v. Motel 6 Operating, L.P.* (2016) 4 Cal.App.5th 385, 390 (*Soto*).)  But an employer's payment of employees' wages does not depend in any relevant sense on the issuance of compliant wage statements.  And as we have repeatedly observed, it is ultimately the full and prompt payment of wages that is of overriding importance. (See, e.g., *Oman I*, at p. 777 [" ' " 'Delay of payment or loss of wages results in deprivation of the necessities of life, suffering inability to meet just obligations to others, and, in many cases may make the wage-earner a charge upon the public' " ' " (quoting *Smith v.*

wording of section 226, subdivision (e)(1), read in its broader statutory context, is that the Labor Code considers an employer's good faith a defense to penalties for nonpayment and nonreporting alike.

Naranjo raises two primary objections to this conclusion. The first is that to permit an employer's good faith belief that it was in compliance to defeat a claim of penalties would run counter to the age-old legal maxim "ignorance of the law is no excuse." (See, e.g., *Novoa v. Charter Communications, LLC* (E.D.Cal. 2015) 100 F.Supp.3d 1013, 1028 [invoking the maxim to reject the good faith defense]; see also *Cabardo v. Patacsil* (E.D.Cal. 2017) 248 F.Supp.3d 1002, 1010 [adopting *Novoa*'s reasoning]; *Kao*, *supra*, 12 Cal.App.5th at p. 962 [same]; *Furry*, *supra*, 30 Cal.App.5th at p. 1085 [following *Kao* and *Cabardo*].)

This maxim reflects a principle that is deeply rooted in the law. It explains why, for example, in an ordinary criminal prosecution, the state must prove only that the defendant knew or intended his criminal actions, and need not take on the additional burden of proving the defendant understood the illegality of those actions. (See *Stark v. Superior Court* (2011) 52 Cal.4th 368, 397 [in a prosecution for bigamy, for example, "the defendant must know that he is marrying and that he is already married to another," but "[t]he defendant need not know his conduct is illegal"].) But this venerable principle, stated categorically as it often is, nonetheless has well-understood exceptions. The law sometimes does make the consequences of

---

*Superior Court* (2006) 39 Cal.4th 77, 82)]; see also *Voris v. Lampert* (2019) 7 Cal.5th 1141, 1148 ["prompt and complete wage payments are of critical importance to the well-being of workers, their families, and the public at large"].)

a person's actions depend on the person's understanding of the governing law. We have observed, for instance, that where "violation of a penal statute is premised on the violator's harboring a particular mental state with respect to the nonpenal legal status of a person, thing, or action," it is " 'firmly established' " that an offense's requirement of " 'any special mental element, such as that the prohibited act be committed knowingly, fraudulently, corruptly, maliciously or wilfully' " will not be met if " 'some mistake of nonpenal law' " precluded the defendant from forming the requisite mens rea. (*People v. Hagen* (1998) 19 Cal.4th 652, 661, fn. 4, italics omitted.) The high court has similarly concluded that "the maxim [that ignorance or mistakes of law are not excuses] does not normally apply where a defendant 'has a mistaken impression concerning the legal effect of some collateral matter and that mistake results in his misunderstanding the full significance of his conduct,' thereby negating an element of the offense." (*Rehaif*, *supra*, 588 U.S. at p. ___ [139 S.Ct. at p. 2198].) A penal statute specifying that the defendant is liable if he or she "knowingly violates" (18 U.S.C. § 924(a)(2)) one or more listed legal provisions therefore does not make criminally liable the defendant who is unaware of the legal conditions that make his conduct unlawful. (*Rehaif*, at pp. 2199–2200; see also *Liparota*, *supra*, 471 U.S. at p. 433 [holding that a statute imposing criminal liability on "whoever knowingly uses, transfers, acquires, alters, or possesses" food stamps "in any manner" not authorized by law, 7 U.S.C. § 2024(b)(1), required proof "that the defendant knew that his acquisition or possession of food stamps was . . . unauthorized"].) When laws are specifically aimed at conduct that has been undertaken with disrespect or disregard for the governing law, it follows that the law will exempt

unwitting violations — "despite the legal cliche 'ignorance of the law is no excuse.' " (*Flores-Figueroa v. United States* (2009) 556 U.S. 646, 652.)[8]

Naranjo's second objection rests on section 226, subdivision (e)(3), which states that "a 'knowing and intentional failure' does not include an isolated and unintentional payroll error due to a clerical or inadvertent mistake." Naranjo adopts the reasoning of certain courts that have read this language, which was added in 2012, as an exhaustive statement of what is not "knowing and intentional." As the *Gola* court put it, the addition of subdivision (e)(3) shows "that the Legislature intended to exclude only truly errant or mistaken violations from the reach of section 226's penalty provisions, not competing legal interpretations." (*Gola, supra,* 90 Cal.App.5th at p. 566; see also *Furry, supra,* 30 Cal.App.5th at p. 1085 [holding that the employer had not presented a viable defense because it conceded that the wage statements were deficient in the manner alleged by the employee and did not "contend that the requisite information was omitted due to a clerical or inadvertent mistake"].) At the outset, the parties disagree about whether subdivision (e)(3) is applicable at all in this case, since it was not enacted until 2012 — years after the events relevant to the penalty issue in this case, which occurred between June 2004 and September 2007. We need not resolve this dispute; whether

---

[8] We speak here, of course, solely of the penalty provision in section 226, subdivision (e)(1). As we have already explained, even unwitting violations of the wage statement law can be pursued in a DLSE enforcement action or a private suit seeking injunctive relief and an award of costs and attorney's fees.

subdivision (e)(3) applies retroactively or not, it does not alter the analysis.

Naranjo's argument to the contrary rests on a misreading of section 226, subdivision (e)(3). That provision does not purport to set out a comprehensive definition of what "knowing and intentional" means. It merely states one thing that "knowing and intentional" does not mean: "a 'knowing and intentional failure' *does not include* an isolated and unintentional payroll error due to a clerical or inadvertent mistake." (§ 226, subd. (e)(3), italics added.) It does not follow from this that a failure to comply *is* knowing and intentional unless it stems from an isolated payroll error. As a general matter, statements about what a statutory term does or does not include should be read as illustrative rather than exhaustive. (See Garner's Dict. of Legal Usage (3d ed. 2011) p. 439 ["including" "should not be used to introduce an exhaustive list, for it implies that the list is only partial"], citing *Puerto Rico Maritime Shipping Auth. v. I.C.C.* (D.C. Cir. 1981) 645 F.2d 1102, 1112, fn. 26 ["It is hornbook law that the use of the word 'including' indicates that the specified list of carriers that follows is illustrative, not exclusive"]; see also *Ornelas v. Randolph* (1993) 4 Cal.4th 1095, 1101 [" 'includes' [is] ordinarily a term of enlargement rather than limitation"].) More importantly, to read the provision in this manner would set the wage statement law at odds with itself. Not every wage statement violation depends on a payroll error (isolated or not). For all those wage statement violations that depend on some other sort of error — say, a factual mistake about whether a particular employee is based in California and is thus entitled to a wage statement that complies with California law (compare *Ward v. United Airlines, Inc.* (2020) 9 Cal.5th 732, 760 ["Section 226 applies to wage

statements provided by an employer if the employee's principal place of work is in California"] with *Oman I, supra*, 9 Cal.5th at p. 776 ["non-California-based" employees are not entitled to wage statements that comply with California requirements]) — the effect of Naranjo's reading of the 2012 amendment would be to read the "knowing and intentional" requirement out of section 226, subdivision (e)(1). We presume this is not what the Legislature intended when it added subdivision (e)(3) to the statute. (See, e.g., *California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 945 [invoking the "strong presumption" against repeals by implication]; accord, *Meza v. Portfolio Recovery Associates, LLC* (2019) 6 Cal.5th 844, 863 [we expect the Legislature to speak clearly when it deviates from established rules].)

As a variation on the same theme, Naranjo directs our attention to the next sentence of subdivision (e)(3), which states: "In reviewing for compliance with this section, the factfinder may consider as a relevant factor whether the employer, prior to an alleged violation, has adopted and is in compliance with a set of policies, procedures, and practices that fully comply with this section." (§ 226, subd. (e)(3).) This provision does not help his argument. Naranjo assumes the reference to policies and procedures in this sentence refers to policies and procedures for issuing itemized statements of hourly rates, hours worked, and other required wage and employment-related information, *based on correct legal judgments* about whether certain disputed items fit into these categories. Even if Naranjo's reading were correct — a question we need not contend with here — this sentence does nothing more than identify one, nonexclusive factor for consideration in evaluating an employer's compliance with section 226. It does not purport to define the universe of

matters a factfinder may take into account in deciding whether a failure to comply with section 226 is knowing and intentional. It thus does not undermine our conclusion that a court may also take into account whether the employer's failure to comply with section 226's requirements was the product of a reasonable, good faith misunderstanding of those requirements and their proper application.[9]

---

[9]     Naranjo also invokes Labor Code section 226.3, which states: "In enforcing this section, the Labor Commissioner shall take into consideration whether the violation was inadvertent, and in his or her discretion, may decide not to penalize an employer for a first violation when that violation was due to a clerical error or inadvertent mistake." (Lab. Code, § 226.3 (section 226.3), added by Stats. 1979, ch. 1050, § 3, p. 3703 and amended by Stats. 1992, ch. 424, § 1, p. 1554.) It is not entirely clear how Naranjo thinks this provision helps his argument. Naranjo appears to be relying less on this provision than on a Court of Appeal decision he understands to have interpreted "inadvertent," in this context, to exclude good faith legal mistakes. But the decision in question, *Heritage Residential Care, Inc. v. Division of Labor Standards Enforcement* (2011) 192 Cal.App.4th 75, did not so hold; it instead simply held that no such good faith defense had been made out under the circumstances of the case, which involved misclassification of employees as independent contractors. (See *id.* at p. 88.) In any event, as case law makes clear, section 226.3 is sufficiently different from section 226, subdivision (e)(1) that it would be hazardous to draw any firm conclusions about the meaning of one statute based on the other. (Cf. *Raines v. Coastal Pacific Food Distributors, Inc.* (2018) 23 Cal.App.5th 667, 680 ["section 226.3 clearly does not include the knowing and intentional requirement of section 226[, subd.] (e)"]; *Gunther v. Alaska Airlines, Inc.* (2021) 72 Cal.App.5th 334, 354–355 [reading the plain language of the statute to mean that section 226.3 penalties are available only where the employer fails to provide wage statements or keep required records].)

## C.

To the extent any ambiguity remains, we may consult the legislative history.  (See, e.g., *People v. Smith* (2004) 32 Cal.4th 792, 797–798.)  The parties vigorously dispute what lessons to draw from that history.  We do not find the history to be particularly revealing, but what we can glean is consistent with the view that section 226, subdivision (e)(1) was not meant to punish good faith wage statement mistakes.

The history behind the 1976 enactment of the penalty provision in section 226, subdivision (e)(1) is sparse and oblique.  The parties focus on just two pieces of correspondence related to the passage of the legislation.  First, in a letter to the Governor supporting the bill, Alex Saldamando, counsel for bill sponsor California Rural Legal Assistance, stated that "[t]here are a number of employers, usually small growers, who systematically refuse to give wage stub information to their employees.  A number simply pay in cash, or pay by check without furnishing itemized statements.  One grower operating in Yuba County went as far as detaching the wage stub before giving the employee the paycheck.  Serious consequences for employees can result. . . .  The law should permit them to recoup their losses from an employer who *knowingly and intentionally flaunts the law*."  (Alex Saldamando, California Rural Legal Assistance, letter to Governor Edmund G. Brown, Jr., Aug. 30, 1976, p. 1, italics added.)  Saldamando also stated that employer interests had dropped their opposition to the bill after "we persuaded them that an employer who deliberately failed to provide wage information should be liable for the consequences of his or her act to an employee who had labored in good faith." (*Ibid.*)

Second, in a different letter to the Governor, the bill's sponsor in the Legislature, Assemblyman Bill Lockyer, similarly stated: "I was surprised to learn that some employers consistently fail to provide [wage stub] information to their workers. The sponsors of the bill, California Rural Legal Assistance, informed me that some growers make a practice of not providing an itemization of wages." (Assemblyman Bill Lockyer, sponsor of Assem. Bill No. 3731 (1975–1976 Reg. Sess.), letter to Governor Edmund G. Brown, Jr., Sept. 2, 1976.)

These bits of legislative history are neither authoritative nor definitive. But we have previously said that these sorts of "statements about pending legislation are entitled to consideration to the extent they constitute 'a reiteration of legislative discussion and events leading to adoption of proposed amendments rather than merely an expression of personal opinion.' " (*Martin v. Szeto* (2004) 32 Cal.4th 445, 450–451, quoting *California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 700; cf. *Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 72 [considering similar evidence when "the purpose of the legislation was best explained by its author in a letter to the Governor urging him to approve it"]; *Larkin v. Workers' Comp. Appeals Bd.* (2015) 62 Cal.4th 152, 164, fn. 10 ["While there are often limits to what an interpreter may reasonably infer from an individual legislator's letter [citation], we have considered letters expressing the views of a bill's sponsor where those views are fully consonant with the statutory language and the history of the legislation"]; but see *People v. Wade* (2016) 63 Cal.4th 137, 143 [" '[T]he statements of an individual legislator, including the author of a bill, are generally not considered in construing a

statute, as the court's task is to ascertain the intent of the Legislature as a whole in adopting a piece of legislation' "].)

Here, the statements suggest that the intent behind the penalty provision was to punish those who knowingly and intentionally flouted the law by "deliberately fail[ing] to provide wage information" to their employees. The available legislative history contains no suggestion that the Legislature intended for the same provision to punish those who make good faith mistakes about what the law requires.

**D.**

Naranjo raises concerns that excusing employers from section 226 penalties based on good faith mistakes of law will excuse and even incentivize ignorance of the law. These concerns are unfounded.

As a general rule, where the law is clear and thus can easily be ascertained, knowledge of the law may be fairly imputed to an employer. (Cf., e.g., *Marshall v. A & M Consolidated Independent Sch.* (5th Cir. 1979) 605 F.2d 186, 191 ["actual awareness of the law is unnecessary to establish willfulness. Knowledge is imputed"].) Moreover, courts that have evaluated employers' good faith when determining whether to award waiting time penalties under section 203 have uniformly focused on whether the employers' basis for disputing liability was objectively reasonable. In *Barnhill*, for example, the Court of Appeal emphasized the "uncertainty," underscored by conflicting case law, about whether an employer had the right to set off an employee's debt against wages due on separation. (*Barnhill, supra*, 125 Cal.App.3d at p. 8.) More recently, the Court of Appeal concluded that the trial court correctly declined to award penalties when the employer's legal obligations under

a living wage ordinance were "unclear," and the employer offered in good faith arguments that, although ultimately adjudged incorrect, were not "unreasonable or frivolous." (*Amaral, supra*, 163 Cal.App.4th at p. 1202; see *id.* at pp. 1202–1204.)

On the flip side, the Court of Appeal has affirmed trial courts' findings that the employer lacked a good faith belief in the legality of its actions when the employer's position was clearly erroneous or based on an unexcused failure to ascertain the law. (See, e.g., *Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.*, *supra*, 102 Cal.App.4th at p. 782 [affirming trial court's award of section 203 penalties when the employer's classification of employees as pipe tradesmen rather than sprinkler fitters was clearly erroneous and therefore not reasonable]; *Diaz, supra*, 23 Cal.App.5th at p. 869 [affirming trial court's award of penalties when the employer negligently failed to inquire into living wage increases under an amended ordinance].)

Because courts already evaluate an employer's misunderstanding of legal requirements against a standard of objective reasonableness, there is little reason to worry that recognizing a good faith defense to section 226 wage statement penalties will create adverse incentives for employers. As the Ninth Circuit recently concluded after examining our appellate courts' application of the good faith defense to section 203 penalties, the defense does not "reward ignorance of the law"; it only means that penalties will be imposed on "employers who lack a good excuse" while employers who face genuine legal uncertainty and make mistakes of law that are reasonable and supported by evidence will be spared. (*Hill v. Walmart Inc.* (9th Cir. 2022) 32 F.4th 811, 816.) Allowing a good faith defense in

cases where the employer's obligations are genuinely uncertain "amply serves the balance struck by the applicable statutes and regulations between incentivizing prompt payment of wages and shielding innocent mistakes from penalties." (*Id.* at p. 817.) The same is true of the balance struck in the wage statement law.

### E.

To sum up: We hold that an employer's objectively reasonable, good faith belief that it has provided employees with adequate wage statements precludes an award of penalties under section 226, subdivision (e)(1). An employer that believes reasonably and in good faith, albeit mistakenly, that it has complied with wage statement requirements does not fail to comply with those requirements knowingly and intentionally.

That conclusion provides a complete answer to the issue as it arises in this case. The trial court awarded section 226 penalties to Naranjo based on its conclusion that Spectrum's wage statement violations were "not inadvertent" and therefore must have been "knowing and intentional" within the meaning of that provision. Reversing the trial court, the Court of Appeal concluded that because Spectrum had, in fact, disputed its liability reasonably and in good faith, Spectrum cannot be held liable for penalties under section 226. The Court of Appeal was correct.

There is no genuine question that Spectrum had a reasonable, good faith basis for believing it was complying with California wage and hour law. Over the more than 15 years this case has been pending, Spectrum has succeeded with its legal defenses more than once — even though the decisions in its favor would later be overturned on appeal. The trial court

agreed with Spectrum that its defenses in the first phase of the trial would have precluded the class from any recovery at all and "were presented in good faith and were not unreasonable or unsupported by the evidence." The trial court concluded that there was at least some uncertainty, given Spectrum's role as a federal security contractor, whether California wage laws and wage orders applied to Spectrum officers at all. At the very least, the trial court concluded that the issue was not so clear cut that Spectrum's defenses were unreasonable or unsupported. The trial court's good faith finding implies that it found Spectrum's legal positions reasonable, if ultimately unconvincing. That is to say, the trial court was persuaded that Spectrum's mistaken belief that it did not owe employees premium pay for missed meal breaks was more than mere ignorance; it was supported by evidence and reasonable legal arguments. There is also no record evidence that Spectrum acted in bad faith or knowingly and intentionally omitted premium pay from wage statements. The Court of Appeal affirmed the trial court's good faith finding and Naranjo has not renewed his challenge to that finding.

Whether premium pay for missed meal breaks should be reported on wage statements as "wages earned" and missed breaks credited as "hours worked" was also an unsettled legal issue when this case was tried. Recall that Spectrum's section 226 liability here is derivative of its section 226.7 liability: Because Spectrum did not pay its employees all of the wages that they were owed when it failed to compensate them for missed meal breaks, Spectrum's itemized wage statements were inaccurate insofar as they failed to include all of the wages that employees were owed. (*Naranjo III*, *supra*, 13 Cal.5th at p. 121.) During the final phase of the trial, Spectrum argued that section

226 penalties were not available in this case because premium pay is itself a penalty for failure to comply with section 226.7's meal break requirements, not a wage that must be reported on a wage statement. Section 226 does not include missed-break premium pay among the categories of information that must be included in wage statements. (See § 226, subd. (a).) A number of federal district courts had concluded that meal premiums did not need to be reported as wages when this case was tried in 2013. (See, e.g., *Nguyen v. Baxter Healthcare Corp.* (C.D.Cal., Nov. 28, 2011, No. 8:10-cv-01436-CJC (SSx)) 2011 WL 6018284 at p. *8 [rejecting — and noting the lack of support for — "the proposition that meal period premiums must be included in an employee's wage statement"]; accord, *Jones v. Spherion Staffing LLC* (C.D.Cal., Aug. 7, 2012, No. LA CV11-06462 JAK (JCx)) 2012 WL 3264081 at p. *8 ["Plaintiff cannot advance a claim for noncompliant wage statements pursuant to section 226[, subd.] (a) or failure to pay wages due upon termination pursuant to section 203 based solely on alleged violations of section 226.7"]; cf. *Finder v. Leprino Foods Co.* (E.D.Cal., Mar. 12, 2015, No. 1:13-CV-2059 AWI-BAM) 2015 WL 1137151 at pp. *4–*5 [reaching the opposite conclusion while noting disagreement among federal courts on the issue and the lack of state court appellate authority].) No appellate court in California had addressed the issue at the time.

Nor was it clear then that section 226 penalties are available in cases where the section 226 claims are based on underlying wage violations and the wage statements reflected employees' actual work hours and compensation. Nearly five years after the trial here, the Court of Appeal concluded, as a matter of first impression, that wage statements that "correctly reflected the hours worked and the pay received" were accurate

and lawful under section 226 even though the employer had failed to pay overtime at an appropriate rate after improperly adopting an alternative workweek schedule. (*Maldonado v. Epsilon Plastics, Inc.* (2018) 22 Cal.App.5th 1308, 1337 ["That the [alternative workweek schedule] ultimately turned out to be invalid mandates that the employees receive unpaid overtime, interest, and attorney's fees," but "[i]t does not mandate that they also receive penalties for the wage statements which accurately reflected their compensation under the rates at which they had worked at the time"]; see *id.* at pp. 1334, 1336–1337 & fn. 15; see also *Soto, supra,* 4 Cal.App.5th at pp. 392–393 ["an employer is required to identify only those statutory items that are part of the employee's *current* monetary compensation. The employer must provide the employee with an itemized statement identifying *the specific wages being paid at the time of the payment*" (italics added)].) Even then, it was unclear whether wage statements that did not report earned but unpaid wages were accurate — whether an employer that failed to compensate employees adequately also violated section 226 when wage statements reflected the actual but unlawful rate at which those employees were paid.

The Court of Appeal here was the first to consider whether missed-break meal premiums must be reported on wage statements. It agreed with Spectrum that section 226.7 premium pay does not need to be reported as an employee's "wages earned" or "hours worked" in wage statements and held that such penalties were unavailable here as a matter of law. (See *Naranjo II, supra,* 40 Cal.App.5th at p. 474.) We took up review of that issue to correct the "confusion" among federal district courts and the Courts of Appeal about the availability of section 203 and section 226 penalties derivative of unpaid and

unreported missed-break meal premiums, and we reversed in part the judgment of the Court of Appeal. (*Naranjo III*, *supra*, 13 Cal.5th at p. 104; see also *id.* at p. 121 [noting "a split of authority has developed among the many federal district court cases to consider the question"].) Rejecting the reasoning in extant appellate cases, we held that "failure to report premium pay for missed breaks can support monetary liability under section 226 for failure to supply an accurate itemized statement reflecting an employee's gross wages earned, net wages earned, and credited hours worked" — even if meal premiums were not paid. (*Id.* at p. 121.)

Before our 2022 decision, it was uncertain whether Spectrum had violated section 226. The question whether wage statements must include premium pay for missed meal breaks, even if unpaid, was complex and debatable. (Cf. *City of Ontario v. Superior Court* (1970) 2 Cal.3d 335, 345 [under Code Civ. Proc., § 473, "an honest and reasonable mistake of law on [a " 'complex and debatable' "] issue is excusable"]; accord, *McCormick v. Board of Supervisors* (1988) 198 Cal.App.3d 352, 362 ["where the law is not yet established attorneys cannot be expected to be omniscient"].) Given the uncertainty and confusion, it was not objectively unreasonable for Spectrum to believe, in the period between June 2004 and September 2007, that it had no obligation to report meal premiums as wages. Imposing liability under these circumstances would penalize Spectrum not for failing to apprise itself of its obligations, but

for failing to predict how unsettled legal issues would be resolved many years down the line.[10]

In short, the Court of Appeal in this case correctly concluded that when an employer shows that it reasonably and in good faith, albeit mistakenly, believed that it complied with section 226, subdivision (a), that employer's failure to comply with wage statement requirements is not "knowing and intentional," and the employer is therefore not subject to penalties under section 226, subdivision (e)(1). Here, the trial court found that Spectrum argued in good faith that it did not fail to comply with California meal break requirements. Moreover, whether unpaid premiums for missed meal breaks must be reported as "wages earned" and credited as "hours worked" in wage statements was uncertain until we settled the issue in 2022. Given these legal uncertainties, Spectrum's failure to include unpaid meal premiums in its employees' wage

---

[10] In his reply brief, Naranjo argues for the first time that Spectrum's failure to issue compliant wage statements was the product of simple ignorance of the law, not the product of any considered judgment about what the law requires. Naranjo points out that John Oden, Spectrum's Vice President and Personnel Manager, testified at trial that he was not familiar with any applicable wage orders before Naranjo filed this lawsuit.

We need not address this belatedly raised argument, which calls into question the very premise of the question Naranjo raised for this court's review: namely, whether Spectrum's good faith belief it was in compliance precludes the imposition of section 226 penalties. But the argument based on Oden's professed unfamiliarity with the wage orders fails in any event. As our discussion makes clear, Naranjo's claims raised several complex and previously unsettled legal questions, the answers to which do not turn on the content of the wage orders.

statements from June 2004 to September 2007 was not "knowing and intentional" within the meaning of section 226, subdivision (e)(1).[11]

### III.

The judgment of the Court of Appeal is affirmed.

**KRUGER, J.**

**We Concur:**

**EVANS, Acting C. J.**
**CORRIGAN, J.**
**LIU, J.**
**GROBAN, J.**
**JENKINS, J.**
**RODRIGUEZ, J.**[*]

---

[11] We disapprove the following cases to the extent they are inconsistent with this opinion: *Gola v. University of San Francisco, supra,* 90 Cal.App.5th 548; *Furry v. East Bay Publishing, LLC, supra,* 30 Cal.App.5th 1072; *Kao v. Holiday, supra,* 12 Cal.App.5th 947.

[*] Associate Justice of the Court of Appeal, First Appellate District, Division Three, assigned pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Naranjo v. Spectrum Security Services, Inc.

---

**<u>Procedural Posture</u>** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 88 Cal.App.5th 937
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S279397
**Date Filed:** May 6, 2024

---

**Court:** Superior
**County:** Los Angeles
**Judge:** Barbara Marie Scheper

---

**Counsel:**

Rosen Marsili Rapp, Howard Z. Rosen, Jason C. Marsili and Brianna Primozic Rapp for Plaintiffs and Appellants.

Gusdorff Law and Janet Gusdorff for California Employment Lawyers Association as Amicus Curiae on behalf of Plaintiffs and Appellants.

Duane Morris, Robert D. Eassa, Paul J. Killion, Eden E. Anderson, Sarah A. Gilbert; Tremblay Beck Law and David Carothers for Defendant and Appellant.

Munger, Tolles & Olson, Benjamin J. Horwich, Aimee Feinberg and Maggie H. Thompson for Chamber of Commerce of the United States of America and the California Chamber of Commerce as Amici Curiae on behalf of Defendant and Appellant.

Quarles & Brady, George S. Howard, Jr., Jeffrey P. Michalowski and Adrielli Ferrer for Employers Group and the California Employment Law Counsel as Amici Curiae on behalf of Defendant and Appellant.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Jason C. Marsili
Rosen Marsili Rapp LLP
11150 West Olympic Boulevard, Suite 990
Los Angeles, CA 90064
(213) 389-6050

Paul J. Killion
Duane Morris LLP
Spear Tower, One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
(415) 957-3000